## No. 16,152.

McNichols, Auditor et al. *v.* Police Protective
Association of Denver et al.

(215 P. [2d] 303)

Decided November 28, 1949. Rehearing denied February 27, 1950.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, for plaintiff in error.

Mr. ANTHONY F. ZARLENGO, Mr. DAVID BROFMAN, Mr. CHARLES A. GRAHAM, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

At a municipal election held in the City and County of Denver May 20, 1947, an amendment to the municipal charter, dealing with pensions and relief for members of the police department, received a majority vote and, under its terms, became effective June 1, 1947. Previously, under the 1927 municipal code, police pensions and relief had been in the hands of one administrative officer. By the terms of this 1947 amendment an administrative body of five persons was created, called the Police Pension and Relief Board, and a method was provided for the election of its members.

As a result of the subsequent refusal of this administrative board to pay a pension to Mosetta Walton, widow of Harry Walton, who at the time of his death was a sergeant in the Denver Police Department, Mrs. Walton brought suit against William H. McNichols, as auditor of the City and County of Denver, to compel him to make the payments which she maintained were justly due her. Having suffered adverse judgment in the trial court, McNichols came here seeking reversal and we have hitherto announced our opinion in that case, affirming the judgment. *McNichols v. Walton,* 120 Colo. 269, 208 P. (2d) 1156.

In another suit certain former members of the police department, entitled to retirement pay or pensions after twenty-five years of active service, brought suit against Robert J. Kirschwing, as head of the Department of Safety, and William H. McNichols, as city and county auditor, to compel the payment of larger pensions than the city officials were willing to authorize under the new 1947 charter. Being unsuccessful in the trial court, the officials came here on writ of error, and our opinion in that case also has been announced, affirming the judgment. *Kirschwing, et al. v. O'Donnell,* 120 Colo. 125, 207 P. (2d) 819.

It subsequently appeared that other questions were arising involving the interpretation of the 1947 charter amendment. The present suit was brought by McNichols,

as auditor, seeking a declaratory judgment not only on the matters already raised in the two above-mentioned actions but on various other questions .hereinafter discussed. Complainants, alleging this threat of a multiplicity of suits, requested a determination of the contentions of the parties to the suit and a declaration of their rights on the various issues as defined in paragraphs 17 to 29 of the complaint.

██ ██ It is to be noted that the police fund is a public fund impressed with a trust for public servants and can be disbursed only by clear authority of the law. *State ex rel. v. Board of Trustees*, 149 Ohio St. 367, 78 N. E. (2d) 719, 723. The auditor's duties are determined by sections 139 and 140, 1927 compilation of the charter of the City and County of Denver. He is forbidden by those sections to disburse city funds unless there is a legal liability to do so. *Cross v. McNichols*, 118 Colo. 442, 195 P. (2d) 975.

██ We believe that the trial court was justified in entertaining this action, and that it was correct in finding that the controversies are real and involve substantial amounts of money for the parties concerned. It properly took jurisdiction and in form acted correctly in entering a declaratory judgment.

The auditor suffered adverse judgment on all questions involved, with the exception of the two covered by the cross specifications of points. He now seeks reversal on those points resolved unfavorably to him.

We discuss the thirteen specifications of points in order:

The first specification goes to the construction placed by the trial court upon the whole amendment. It is alleged that, except in the two instances to which we refer in the cross specifications, the interpretation is erroneous. This specification will be resolved by our rulings on the more itemized specifications that follow.

██ The second specification reads: "The trial court erred in construing the term of 'twenty-five years of

active service' as used in the first paragraph under the heading 'Retirement' in the amendment to be equivalent to the last year of active service." We have already ruled on this point adversely to the auditor in *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P. (2d) 819.

The third specification is: "The trial court erred in failing to hold that the pensions of those who had retired from the Denver Police Department before June 1, 1947 should be reduced to the amount at which they were originally retired where they had served less than twenty-five years of active service." We are of the opinion that the ruling of the trial court, to which reference is made in this specification, did constitute reversible error. As we pointed out in *Kirschwing v. O'Donnell, supra,* one of the principal provisions of the June 1, 1947 amendment is that no member shall be granted a pension prior to the termination of twenty-five years of active service. This clause standing alone might well be deemed to wipe out any pensions granted prior to the termination of twenty-five years of service, except for the paragraph containing the saving clause under "Retirement" reading as follows: "The pension herein provided for shall be paid to those who have been retired from service prior to the effective date of this amendment, as well as those who shall be so retired after the effective date of this amendment; *provided, however, that at no time shall the pension of any member be reduced to an amount less than the amount he was entitled to at the time he was retired from active service."* This proviso, in our judgment, establishes a floor or base for all pensions now in existence. The only provision in the act for an increase above this floor or base is the escalator clause which became effective June 1, 1947. This is based upon the rate of pay in the rank a member held at the time he was retired. The so-called escalator clause applies to increases in pay granted in the rank subsequent to the effective date of the act, June 1, 1947. There is no provision in the act recogniz-

ing the raises in pay in the rank any member (retired prior to twenty-five years service) held between the time he was retired and the effective date of the amendment, June 1, 1947. We believe, therefore, that on this point the auditor is correct and that the trial court's judgment on this provision should be reversed in accordance with this paragraph.

The fourth specification reads: "The trial court erred in failing to hold that the pensions of those who had retired from the Denver Police Department before June 1, 1947 should be computed at one-half the salary received by them in their twenty-fifth year of active service where they had served actively for twenty-five years or more." We are of the opinion that this specification must be resolved adversely to the auditor, in the light of our holding in *Kirschwing et al. v. O'Donnell, supra.*

The fifth specification is: "The trial court erred in holding that the period of time a member of the Denver Police Department may have served as a provisional appointee shall be included in computing the time required for eligibility for retirement on pension." The eligibility clause, which gives rise to this question, reads: "Any member of the Denver Police Department in the classified service who shall have completed twenty-five years of active service in said department, * * *" It will be noted that other requirements, in addition to the twenty-five years of active service, are: 1. The prospective pensioner must be a member of the Denver Police Department; 2. He must be in the classified service; and 3. He must have served the required period of time in the department. Under the charter the Civil Service Commission has authority to make provisional appointments as follows: "In cases where the commission is unable to comply with the requisition from the eligible list, it may allow a provisional appointment, or it may authorize the appointing power to select a suitable person who shall be subject to examination, and if found qualified, certified for appointment." Char-

ter, sec. 232, 1927 compilation. A provisional employee is not in the classified service. Accordingly, he is not within the scope of the first paragraph under "Retirement" which establishes a pension for any member of the police department in the classified service. In *Smith v. Stapleton*, 105 Colo. 565, 100 P. (2d) 162, we held that a provisional appointee in the Denver Police Department has no standing as a member of the classified service in the department. Such a person is a mere employee, subject to dismissal without civil service protection. An employee is not a member of the police department because by section 319 of the charter, 1927 compilation, all who are listed as members of the department are ipso facto officers of the city and not mere employees. *McNichols v. People ex rel.*, 95 Colo. 235, 238, 35 P. (2d) 863.

█ Counsel for the officers admit the force of these propositions, but maintain that the requirements discussed above apply to the member of the department at the time he becomes eligible for a pension and not at the beginning of his service, citing: *State ex rel. v. Schneider*, 147 Ohio St. 252, 70 N.E. (2d) 455, where the court said: "The terms of section 31 are met where at the time he is placed on the police pension roll an individual holds his position in the division of police by reason of having undergone a competitive civil service examination." A study of that case shows it is not in point. Under the Ohio law, and the rules of the appropriate board of trustees, a provisional patrolman was in the classified service. To use the words of the Ohio court: "Throughout the time relator served as a patrolman under provisional appointment, he was in the classified civil service." Since in this jurisdiction the provisional appointee is neither in the classifed service nor a member of the department, we are of the opinion that the period during which such provisional appointment was in effect cannot be counted in order to make up the required twenty-five years of active service in the department. See, *Campbell v. Board of Civil Service Com-*

*missioners,* 76 Cal. App. (2d) 399, 173 P. (2d) 58, 61; approved in *Ticknor v. City of Sacramento,* 80 Cal. App. (2d) 284, 181 P. (2d) 893.

There is a further reason for our conclusion that the drafters of the 1947 amendment did not contemplate that the time served as a provisional employee should count in the computation of the period of twenty-five years of active service. The third of the five sources listed from which the Police Pension and Relief Fund draws its funds is as follows: "Each and every member of the Denver Police Department in the classified service shall contribute 3½% of his salary or of his compensation when on disability leave." It is to be noted that under this section the provisional employee—not being a member of the classified service—is not required to make any contribution to the pension fund. It would seem that one has completed twenty-five years of active service in the Denver police department is one who has served as a member of the department for twenty-five years under the classified service. The trial court's judgment is reversed on this point.

█ Specification of points 6 reads: "The trial court erred in holding that the period of timed uring which the period of active service of a member of the Denver Police Department was interrupted by service in the armed forces of the United States shall be included in computing the period of active service required for eligibility for retirement on pension." The charter amendment of June 1, 1947, unlike the firemen's pension statute, has no provision allowing time spent in military service to be included in time spent in active service in the department in computing time for eligibility for pensions. It specifically requires twenty-five years of *active* service which would seem not to include passive or substitute service, or time consumed while on leave of absence. Furthermore, the active service must be service in the department. This amendment was adopted less than two years after the end of hostilities of World

War II. Men were still being mustered out of military service at the time the pension amendment was drafted. Members of the Denver police department had been in military service and their rights to resume their respective positions were being adjudicated. *Hanebuth v. Scott,* 111 Colo. 443, 142 P. (2d) 1008; *Hanebuth v. Patton,* 111 Colo. 447, 142 P. (2d) 1010; *Hanebuth v. Patton,* 115 Colo. 166, 170 P. (2d) 526. These cases dealt not with pensions, but with reemployment rights. The federal statute cited by counsel for members of the department likewise deals with reemployment rights. It does not deal with pension rights; nor does it apply to employees of a municipality, but as to them expresses the hope of Congress that such municipal employees as return from military service may be restored to their former positions. We have been cited to no cases similar to the instant one where, with an ordinance completely silent on the subject, it has been held that the period during which members were in the armed forces and on military leave could be included in determining their years of active service in the department in computing eligibility for a pension. It should be noted in this connection that the period which a member of the department spent in the military service is not necessarily lost to him in building up a pension status, inasmuch as by his service in the armed forces he has become eligible for the various veteran's pensions, benefits and bonuses for which provision has been and is being made by the National Congress. We are not authorized to rewrite this 1947 amendment as we think it should be written. We can only interpret it in the light of what has been written and what has not been written. Finding no provision for justifying the trial court's ruling on this point, we are forced to hold that its ruling should be reversed.

Paragraph 6 of the court's decree reads: "That any member of the Denver Police Department who became or becomes retired after June 1, 1947, with accumulated sick leave owing to him on the date of such re-

tirement, shall be paid at the time of such retirement for all such accumulated sick leave, to be computed at his regular rate of salary." Specifications 7 and 8 are both directed at this ruling, and we discuss them in order.

Specification 7 reads: "The trial court erred in susstaining the validity of that provision of the amendment providing for payment for all accumulated leave at the salary rate at the termination of the term of service of a member of the Denver Police Department." Under this heading counsel for the auditor attacked the constitutionality of the paragraphs of the amendment providing for sick leave to members of the department. At the outset, it is to be noted that the attack of the auditor against this ruling of the court does not involve an attack against the granting of sick leave. The attack is leveled against the payment of a lump sum in lieu of sick leave to those members of the department who, upon retirement, have exhausted none or only a portion of their sick leave allowance.

It is argued that the provision for sick leave violates section 2, article XI of the Colorado Constitution. That section provides: "Neither the state, nor any county, city, town, township or school district shall make any donation or grant to, or in aid of, or become a subscriber to, or shareholder in any corporation or company, or joint owner with any person, company or corporation, public or private, in or out of the state, * * *" We do not believe that this provision is applicable to the facts in the present case, since the section refers primarily to aid to private corporations. As we said in *Colorado Central R. R. Co. v. Lea,* 5 Colo. 192, 196, it was the intention of the framers of the Constitution to prohibit all public aid to railroads and to establish that policy in fundamental law.

It also is suggested that section 12, article XV, is a barrier to the sick leave provisions in the 1947 police pension amendment. That section reads: "The general assembly shall pass no law for the benefit of a railroad

or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past." It will be noted that this section places a restraint upon the state legislature in enacting legislation which imposes upon the people of any county or municipal subdivision a new liability in respect to past transactions. We agree with the contention of counsel for the officers that this section does not prevent a municipality from creating its own liability. *Whittaker v. City of Salem,* 216 Mass. 483, 104 N.E. 359, 360, Ann. Cas. 1915 B, 794, cited by the auditor, contains the statement: "The plaintiff's employment was from year to year. Each year stood by itself as to terms of service. The case is different from what it might have been if the plaintiff's tenure had been for an indefinite time or for a period of time extending beyond the end of 1911." Inasmuch as the service of Denver police officers, as covered by the rules of the Civil Service Commission, exists indefinitely, this case is really in their favor. *Quinlan v. City of Cambridge,* 320 Mass. 124, 68 N.E. (2d) 11, also appears to be distinguishable from the instant case. Voters of Denver can legislate on the purely local matters. In the Cambridge case it appears that the city counsel was acting under authority of state statute concerning the fixing of salaries and had no blanket authority such as Denver has.

It also is urged that section 2, article XX of the Colorado Constitution bars the lump sum payment provided in the sick leave paragraphs. That section reads: "The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who shall, respectively, perform

the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable. *If any officer of said city and county of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter, and paid out of the treasury of the city and county of Denver in equal monthly payments."* (Italics ours). The last sentence, which we have italicized, contains the provision which is alleged to be controlling. The argument runs as follows: That we have held that members of the police department are officers of the City and County of Denver. *McNichols v. People ex rel.,* 95 Colo. 235, 35 P. (2d) 863. The payment of a lump sum in lieu of sick leave to one who has terminated his service with the department is compensation. *In re Interrogatories,* 116 Colo. 318, 180 P. (2d) 1018. The 1947 amendment itself calls this payment, in lieu of sick leave, compensation. The amendment itself differentiates this payment from a pension payment and it represents a payment neither for relief for disability nor sick leave as the member who is retiring is neither disabled nor sick. If it is a gratuity, it is ipso facto invalid. It is further argued that this payment is not received as a stated salary because it is not "salary." *Board of Commissioners v. Trowbridge,* 42 Colo. 449, 95 Pac. 554; and since the amount is indeterminate until the end of service, it is not "stated." The amount is also not "fixed by the charter," because it can be calculated only at the moment of termination of service, after an accounting has been had of the days of sick leave for which the member has been debited or credited; nor is the amount to be paid out in "equal monthly payments," but it is to be paid in one lump sum at "the termination of said member's term of service." It is accordingly contended that this sick leave provision is in conflict with almost every phrase and clause of section 2, article XX of the Colorado Constitu-

tion providing for the payment of salaries to officers of the City and County of Denver.

We have not been cited to a case involving the payment of lump sum cash in lieu of sick leave. We are inclined to doubt that the framers of the Constitution contemplated payments in lieu of sick leave as coming within the purview of section 2, article XX of the Colorado Consitution. The maximum payment for which provision is made under the 1947 amendment, namely: a payment equivalent to the regular salary of the member for a period of not more than ninety days, would not exceed one per cent of the total salary drawn by the member during the twenty-five-year period of active service. It can be plausibly argued as between the member of the department who has exhausted all of his sick leave, and the member who has used none of his, that the latter has put in ninety more days of active service in the department. The sick leave provision undertakes to pay him at the rate of his regular monthly salary for these ninety days of service, which his less fortunate associate, by reason of ill health, was unable to serve. Considered from that standpoint, the payments provided in lieu of sick leave merely equalize the salary payments by giving to the man who has put in more actual service pay for that extra service.

It will be noted that the amount, although paid at one time, is based upon the number of days under ninety that have not been used for sick leave during the twenty-five years of service.

Our conclusion, therefore, is that this payment in lieu of sick leave is an equalizing payment to a member at the regular stated salary to cover a period of time for work performed for the department in excess of the time of service of those who took time off for sick leave, and does not infringe the constitutional provisions which have been discussed. The judgment of the trial court is therefore affirmed.

■ Specification 8 reads: "The trial court erred in

holding that payment should be made for all accumulated leave at the salary rate to a member of the Denver Police Department upon his retirement from active service on pension." Under this heading it is urged that the payment of a lump sum in lieu of sick leave should be made, not when the member ceases to be an active member of the department but when he ceases to be a member of the department. It is argued that at the time of his retirement after twenty-five years of active service a policeman is transferred from active service to retired or inactive service, and in place of his salary he receives the pension which the charter provides; but his connection with the department is not severed. It is argued that the second paragraph under the heading "Sick Leave" does not state that the lump sum payment is due at the termination of the member's active service, but simply at the termination of his service. Therefore, the amendment contemplates a complete separation from the service and not merely a change in status before the officer is entitled to the lump sum payment in lieu of sick leave. Thus, in the third paragraph under "Retirement," the expression, "those members of said department who shall have previously been retired from active service and who are receiving a pension," is used when describing the beneficiaries of any raise in pay received by the rank at which each member was retired; and so, in the third from the last paragraph, the expression is used, "to all members of said department who have been granted pensions heretofore." It is urged that it would be an anomalous situation for a member to be receiving a pension and a lump sum payment on account of sick leave at the same time. If, however, we look upon the lump sum payment as an equalizing payment for time actually spent in active service, the anomaly ceases to exist. It would be more anomalous for the member to have to wait until his death to collect this lump sum, and then to have the representative

of his estate find that the estate's rights were barred. (See this opinion on the 2d cross specification.)

It is stipulated between the parties that this case does not involve the question of whether a member of the department who is discharged for cause is entitled to a lump sum payment in lieu of sick leave. What we have said on this subject, therefore, applies solely to the case of the member whose retirement has been brought about through reasons other than being discharged for cause.

We believe the judgment of the trial court on this phase of the case should be affirmed.

 Specification of Points 9 reads as follows: "The trial court erred in holding that widows of members of the Denver police department, where the death of such members occurred before June 1, 1947, were entitled to any benefits under the charter amendment effective on that date." This specification must be resolved adversely to the auditor, as a result of our holding in *McNichols v. Walton, supra.* The trial court's judgment on this point is accordingly affirmed.

 Specification of Points 10 reads: "The trial court erred in holding that the benefits to which a widow of a deceased member of the Denver Police Department becomes entitled are subject to change proportionately with the salary hereafter paid to the rank which had been held by such member in the department." The court decree on this point states: "That where any member of the Denver Police Department has died, after June 1, 1947, and leaves a widow surviving, there shall be paid to such widow monthly benefits computed at one-third (1/3) of the monthly salary now or hereafter paid to the rank held by such member in the department at the time of his death."

The charter amendment seems to contain no provision which directly supports the trial court's decree, nor does there seem to be any provision in the charter which even indicates an intention that the payments to the widow should be on such a fluctuating basis. The per-

tinent provision of the amendment reads: " * * * his widow shall be entitled to receive monthly benefits from the 'pension and relief fund' equal to one-third of the salary of the member at the time of his death * * *." The salary which her husband received at the time of his death is the unchanging basis of the widow's pension.

This provision is quite unlike the provision for the retired police officers themselves, which reads: "In the event that salaries in the Denver Police Department shall be raised after the effective date of this amendment, those members of said department who shall have previously been retired from active service and who are receiving a pension shall be entitled to an increase in the amount of their pension equal to one-half the raise in pay granted in the rank said member held at the time he was retired."

*State ex rel. v. Board of Trustees,* 149 Ohio 367, 78 N.E. (2d) 719, 722, 724, applied the rule: "Inclusio unius est exclusio alterius." That case involved the interpretation of a law, placing those of the police department retiring after twenty years of service on a fluctuating pension equal to one-half of the salary paid from time to time for the position from which he was retired. A second provision granted a pension to discharged police officers at the rate of 6/16th of their salary at the time of discharge. It was held that the pension of the discharged officer was a fixed amount, based upon the salary at the time of his discharge. Likewise, in the instant case we believe that the provision is clear that the widow's pension is based upon a fixed amount, i.e.: the salary her deceased husband was drawing at the time of his death.

It is argued by counsel for the officers that widows of members of the department means the same as members of the department, and reliance is placed upon *Home v. Souden,* 199 Cal. 508, 250 Pac. 162. In that case, however, the ordinance being interpreted provided that "persons receiving the same [which in that case in-

cluded widows] should be entitled to all the rights and privileges granted under the ordinance, as if they were at the time members of the city fire department." It is clear that *Home v. Souden, supra,* is not applicable to the instant case. The widow under the 1947 amendment is not classed as a member of the department; no reference is made to widows as being entitled to all of the rights and privileges of members of the department; the widow's payment is provided for in a separate paragraph entitled "Dependents," which has no clause similar to the retirement clause that sets up the fluctuating basis to be used in computing the amount of the pension of the officer who has retired from active service. Widows certainly cannot be described as "those members of said department who shall have previously been retired from active service and who are receiving a pension." The judgment of the trial court on this point should be reversed, and the amount of the pension of a widow entitled to a pension under the 1947 amendment should be based, in the words of the amendment, upon the amount of the salary her husband was receiving at the time of his death.

 Specification of Points 11 reads: "The trial court erred in holding that the monthly benefits to be paid to a widow of a retired member of the Denver Police Department were to be computed at one-third the monthly salary now or hereafter paid to the rank such member held in the department at the time he was retired from active service." What we have said in respect to specification of points 10 applies with like effect to specification of points 11. The monthly benefits to be paid to a widow of a retired member are based upon a fixed amount, namely, the salary her deceased husband was drawing at the time he retired from active service. Hence the judgment of the trial court should be reversed on this point.

There is an intention here to pay the widow one-third of the salary her husband was drawing at the time he

ceased to be an active member of the Department. The two obvious methods of ceasing to be an active member are death and retirement on a pension. The framers of the amendment, as we have seen in specification 10, have provided that the widow on the death of her husband in active service shall receive one-third of the salary that he was drawing at the time of his death. The fact that the correlative "or" is used after mentioning the member of the department who was in active service, i.e., "or retired as herein provided," would indicate that it was the intention to treat alike the widow of the man who died in active service and the widow of the man who died after being retired on a pension. Each, upon the death of her husband, shall be entitled to draw one-third of the salary he was receiving at the time he ceased to be in active service. We therefore interpret this paragraph as if it had the following clause inserted: "or in the case of a member previously retired equal to one-third of the salary said member was receiving at the time of his retirement."

Specification of Points 12 is hereinafter discussed under cross specification 1 dealing with "Parents."

 Specification of Points 13 reads: "The trial court erred in holding that the allowances for dependent children payable to the widow of a member of the Denver Police Department were not to be terminated by the remarriage or death of such widow." Under the provisions of section 1576 of the 1927 municipal code, where the member of the police department had died, provision was made for the payment of $8.00 per month to the custodian of each dependent child under the age of fourteen years. A widow became eligible to receive $40 per month "until she marries." The 1947 charter amendment increased the amount of payments for dependent children and raised the age limit of the children who might become beneficiaries; but it also made the payments on behalf of the children an additional credit to the widow. The provision reads as follows: "Upon

the death of any member of the Denver Police Department who was in active service or retired as herein provided, his widow shall be entitled to receive monthly *benefits* from the 'Pension and Relief Fund' equal to one-third of the salary of said member at the time of his death and an *allowance* of twenty dollars ($20.00) per month for the first dependent child under the age of seventeen (17) and ten dollars ($10.00) per month for each additional dependent child under the age of seventeen (17). Said *benefits* shall terminate upon death or remarriage. Should said member leave surviving him no widow, but dependent children under the age of 17, then the widow's *benefits* as above provided plus the additional *allowances* for each dependent child under the age of 17 shall be apportioned among the dependent children under the age of 17." (Italics supplied.) In the last sentence provision is definitely made for surviving children of a member of the department where no widow survives; but it is contended that, in the case where a widow does survive and then dies or remarries, any provision for the children ceases along with the provision for the wife and we are cited to *Hutchison v. City of Hartford,* 129 Conn. 329, 27 A. (2d) 803, where the court, construing a provision in the 1921 Connecticut act, stated: "It makes no provision for the payment to children where he leaves a widow but she later dies. We cannot extend the law to cover the latter situation, which is the one before us. *McPadden v. Morris,* 126 Conn. 654, 13 A. (2d) 679." We do not believe that that case is in point for the reason that the law there does not have the same wording as the Denver charter amendment, and particularly does not use the words "benefits" or "allowances" which appear in the section of the Denver charter under review. If we apply the word "benefits" to the provision made for the widow and the word "allowances" to the provision made for the children, then the last sentence of the section under review, "said benefits shall terminate upon death or re-

marriage" would apply simply to the benefit which the widow received by virtue of being a widow, namely: monthly benefits "equal to one-third of the salary of said member at the time of his death."

We therefore approve and affirm that portion of paragraph 12 of the court decree reading as follows: "That whenever a member or retired member of the Denver Police Department has died leaving a widow and dependent children him surviving, and the said widow thereafter shall remarry or die, allowances shall nevertheless continue to be paid on behalf of said dependent children who are under the age of seventeen (17) in the same amounts as preceded the remarriage or death of said widow, * * *" But we do not approve the last clause of paragraph 12 of the court decree, which reads: "And in the case of the widow's death, the widow's benefits shall be apportioned among such dependent children under the age of seventeen (17), as provided in said Charter Amendment, as in the case where a deceased member leaves dependent children, but no widow him surviving." for the reason that this is in direct conflict with the last sentence of the section of the amendment being construed which reads: "which benefits [referring to widow's benefits] shall terminate upon death or remarriage." This last portion of paragraph 12 of the trial court's decree is therefore reversed. On this proposition the above quoted words from *Hutchison v. City of Hartford, supra,* are applicable.

Cross specification 1 reads: "That the trial court erred in construing that the rights of parents of deceased police officers to benefits were extinguished by the adoption of the Charter Amendment in question." The trial court ruled on this point as follows: (paragraph 11 of decree) "That dependent parents under Section 1576 of the Municipal Code of Denver (1927 Compilation) shall continue to receive payment of Eight Dollars ($8.00) per month therein during the lifetime of such dependent parent, but that any surviving de-

pendent parent of a deceased member of the Denver
Police Department, where such member died or shall
die on or after June 1, 1947, shall be entitled to no pen-
sion benefit or allowance payments." The argument of
counsel for the officers is that parents are entitled to
benefits as provided in section 1576 of the municipal
code. The charter amendment makes no provision for
the parents of police officers who die while in active
service and who leave neither a widow nor dependent
children. It is argued by counsel for the officers that
the amendment does not specifically repeal the benefits
to parents as provided for in section 1576 of the munici-
pal code, nor does it do so by implication; that, there-
fore, it was the intention of the framers of the charter
amendment to permit the needs of surviving parents to
remain as provided in section 1576.

The position of the auditor is that, under section 1576
of the municipal code, provision was made for the pay-
ment of $8.00 each to the surviving mother and father
of a deceased member of the police force under the same
conditions as applied to pensions for widows; that the
effect of the adoption of the charter amendment of June
1, 1947, was to repeal those portions of the municipal
code which dealt with the subject of relief for police
officers and their dependents. The charter amendment
at no point deals with the matter of dependent parents,
and makes no provision whatever for parents of officers
who may die subsequent to June 1, 1947. Neither ex-
pressly nor by implication does it continue payments to
those dependent parents who were receiving $8.00 per
month prior to that date. There is no saving clause in
the amendment preserving their rights. There is a sav-
ing clause covering the pension of retired members of
the police department in the amounts which they re-
ceived at the time of retirement. There being a saving
clause in that instance and no similar saving clause with
respect to dependent parents and a total absence of any
specific provision for them, it would seem that there

was a complete abolishment of all rights to such payments after June 1, 1947. It is pointed out that the framers of the amendment may have expected the dependent parents of deceased police officers thenceforth to receive their support under the more liberal provision of the current old age pension. In fact, the parent receiving a state old age pension would be no better off with this $8.00 policeman's pension, as the amount of the latter pension would be deducted from the state old age pension.

The holding of the court, that payments need not be made to parents of a member of the force dying after June 1, 1947, is hereby affirmed.

Specification of Points 12 is pertinent to the foregoing discussion. It reads: "The trial court erred in holding that the sums payable under law prior to June 1, 1947 to dependent parents of members of the Denver Police Department were to continue to be paid thereafter where such members died prior to June 1, 1947." We agree with the auditor that the trial court was in error on this point. As we have just seen in discussing cross specification 1, the charter amendment makes no provision whatever in any saving clause or elsewhere for parents of members of the force whether such members be deceased prior to or subsequent to June 1, 1947. The judgment of the trial court on this point is, therefore, reversed.

Cross specification of Points 2 reads: "The trial Court erred in construing that the right to a lump sum payment for sick leave was extinguished upon the death of the member of the Denver Police Department and was not payable to the estate or personal representatives of said member." The court held: "That in the event of the death of a member of the Denver Police Department, while in active service or retired, no payment for accumulated sick leave shall be made to his estate, his personal representatives, his heirs, or otherwise." We believe that the trial court was correct in holding that

the clause, "the said member shall receive compensation in full at his regular rate of pay for all accumulated sick leave due him at the termination of his service," did not mean that a payment could be made to the heirs, executors or administrators of deceased policemen as a substitute for sick leave which he did not or was unable to utilize prior to his death. Sick leave is a matter personal to the member and not an assignable property right. Nor does there seem to be an obligation, either legal or moral, on the part of the City and County of Denver to make provision for the representatives of the estate of a deceased police officer as distinguished from his widow and dependent children. No provision is made for the estates of deceased police officers in either the 1927 ordinance or the 1947 amendment.

We do not believe that *State ex rel. v. Board of Trustees, supra,* is in point. No recognition is there made of the executor or administrator of the deceased's estate, provision being made for certain members of the family direct.

 As will have already been noted, this is the third case that has come before us involving the interpretation of what we referred to in *McNichols v. Walton, supra,* as the "unfortunately worded policemen's pension amendment to the Denver Charter," which up to the present time has been the cause of fourteen separate questions being presented for determination—many of them not easily solved. We must again emphasize the fact that courts cannot substitute their opinion as to how a law should read in place of a law already enacted. The function of a court is to try to determine what was the legislative intent from the amendment as written. It is beyond its function and power to supply sentences and paragraphs on matters and topics that have not even been mentioned in the amendment and apparently were never contemplated.

Mr. Chief Justice Hilliard dissents to this court's

rulings on the following Specifications of Points: No. 3, involving the members of the Denver Police Department who retired prior to June 1, 1947, and who at the time of retirement had been in the active service less than twenty-five years; No. 5, involving the rights of provisional employees; No. 6, involving the rights of the members of the Police Department who served in the Armed Forces of the United States; and also to Cross Specification No. 2, involving the rights of estates of officers to accumulated sick leave on retirement.

MR. JUSTICE STONE dissents to this court's ruling on Specification No. 5.