No. 23118.

City and County of Denver, a municipal corporation, and Charles D. Byrne, as Auditor of the City and County of Denver *v.* R. M. Floyd.

(491 P.2d 977)

Decided September 13, 1971. Rehearing denied October 4, 1971.

Max P. Zall, City Attorney, James H. Snyder, Assistant, for plaintiffs in error.

Zarlengo, Mott and Carlin, Leonard V. Carlin, for defendant in error.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

The trial court entered a judgment in favor of retired Captain Floyd of the Denver Police Department, plaintiff, for *sick leave in excess of ninety days* and *fifteen days vacation pay,* totaling 104 days, which had accumulated prior to his retirement. The City and County of Denver, defendant, has brought the matter here for review on writ of error.

This lawsuit involves the construction of two sections of the Charter of the City and County of Denver relating to compensation of members of the police department.

The trial court found that,

"The law in the case appears clear, that under provisions of the City Charter, in particular C5.40, that all time in excess of 90 days sick leave shall become annual vacation, and the party shall receive full compensation at his regular rate of pay, as well as his regular annual 15-day vacation period. *This section of the charter makes no limitation depriving plaintiff of his accrued vacation at the time of retirement,* but clearly states excess sick leave shall be considered regular vacation."

The underscored portion of the above extract from the court's findings indicates the trial court's fallacious approach to the problem at hand. The question is whether the charter grants to the members of the police department the right to accrue vacation time and receive cash therefor at the time of retirement. The limitation exists unless the charter grants the right.

Captain Floyd has called our attention to *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819, suggesting, in effect, that since the charter language is so uncertain and doubtful that in order to determine legislative intent, we must look to the language of the charter in connection with the context of the charter provisions in which the language is employed, the object which they were designed to attain, and the obvious consequences which would follow a construction either way. This we have done.

We disagree with the construction placed upon the two sections by the trial court. We believe that the language of the charter is sufficiently explicit that the legislative intent can be gleaned from the words used without resorting to construction aids.

The two controversial sections are:

"C5.40 *Sick leave.* Each and every member of the Denver police department in the classified service shall be allowed eighteen (18) days per year of sick leave with full compensation at his regular rate of pay, the unused portion of such sick leave to be accumulated until said

member shall have a reserve of ninety (90) days of sick leave. At any time the accumulated reserve of sick leave shall exceed ninety (90) days, the days in excess of ninety shall be added to the member's annual vacation of fifteen days and the member shall receive full compensation at his regular rate of pay for said days as well as for his regular annual fifteen-day vacation period." "C5.40-1 At the termination of said member's term of service with the Denver police department, for any reason, the said member shall receive compensation in full at his regular rate of pay for all accumulated sick leave due him at the termination of his service."

These facts, gleaned from the findings of the trial court, are material to a consideration of the charter provisions. At the time of his retirement, after 25 years of service, Captain Floyd had accumulated 179 days of unused *sick leave* and 15 days of annual vacation. The city, under its interpretation of C5.40, paid the officer compensation in full for 90 days of accumulated *sick leave*. The trial court awarded compensation for an additional 104 days, representing 15 days' vacation pay and 89 days of vacation resulting from unused *sick leave* which exceeded the 90-day limit provided for in C5.40.

It is the plaintiff's contention that all *vacation* resulting from the conversion of unused *sick leave* accumulated to date of retirement is to be fully compensated for in cash upon retirement. In support of this interpretation, Floyd relies on *McNichols v. Police Protective Association,* 121 Colo. 45, 215 P.2d 303. We note that the court in *McNichols* was not considering *sick leave in excess of ninety days,* but was deciding the question of whether the payment for accumulated *sick leave* in a lump sum infringed a provision in Article XX, Section 2, Constitution of Colorado, requiring the payment of "any compensation whatever" to a city officer "as a stated salary." In upholding the charter on this point, the court did not reach the issue before us here.

C5.40 deals with *sick leave,* its accumulation and

treatment while in service, prior to termination of· his service. C5.40-1 alone deals with the compensation· for sick leave upon termination of service.

In C5.40, provision is first made for the granting of 18 days of sick leave per year with full compensation for absences caused by illness. This contemplates that an officer may be absent from service for 18 days in a 12-month period and receive his full pay during such incapacity. If he uses the 18 days (plus any accumulated sick leave) and is still incapacitated under C5.40-3, he is given any additional temporary disability leave at one-half salary. Other provisions for service connected disability may be found in C5.41-1 and C5.53. On the other hand, as in the case of Captain Floyd, if the officer remains healthy he may *accumulate* a 90-day reserve. After building his reserve to its full limit, any additional days of sick leave are converted to the member's annual vacation and added to his "*annual vacation* of 15 days."

It is significant that the excess *sick leave* is added to *annual vacation*. The charter provision contemplates that the city's police officers take not only an annual 15-day vacation, but that they have additional paid time off for their unused *sick leave*. This intent is clearly manifested in this language:

"* * * the days in excess of ninety shall be added to the member's *annual vacation* of fifteen days and the member shall receive full compensation at his regular rate of pay for said days as well as for his *regular annual fifteen-day vacation period*." (Emphasis added.)

 It should be noted that there is no language in the foregoing remotely suggesting that *annual vacation* may be accumulated. In fact the repeated use of "annual" in connection with "vacation" connotes the yearly use of such vacation time. "Annual leave" is defined as "free time granted annually to a jobholder." *Webster's Third New International Dictionary,* p. 88. This meaning is further solidified by the use of the clause "regular annual fifteen-day vacation period." This quite obviously

signifies the use of the vacation time periodically each year — not in some selected years with a right to accumulate that which is not used. The granting of a regular annual vacation period contemplates the use of the time off — not its accumulation over a period of years to be paid for in a lump sum upon retirement.

By using the term *vacation period,* the implication is that during each year a member of the police department would, for a certain specified time (15 days plus excess sick leave), cease work but continue to receive his regular compensation.

To reach the result sought by Captain Floyd a provision similar to C5.40-1 governing accumulated vacation pay would be required. But, since the drafters of the charter saw fit to limit the payment of compensation, at the termination of employment, to "accumulated sick leave" only, there is no way to construe the charter to cover a lump sum payment for unused vacation pay.

Judgment reversed and cause remanded with directions to dismiss the complaint.

MR. JUSTICE HODGES not participating.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON dissenting.