THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE v. HALL.

1. STATUTORY CONSTRUCTION.

The intent of a statute is the law. General words may be restrained to it, and those of narrower import may be expanded to effectuate the intent.

2. SAME—SALARY ACT—EMOLUMENTS.

The word "emoluments," as it appears in the salary act of 1891, is to be taken in a general and comprehensive sense, so as to embrace all proper receipts of the office not included within the terms "fees" or "commissions," as generally defined and understood. It does not include interest on county funds deposited in bank by the county treasurer.

*Appeal from the District Court of Arapahoe County.*

Messrs. GOUDY & TWITCHELL, for appellant.

Mr. GREELEY W. WHITFORD and Mr. D. V. BURNS, for appellee.

WILSON, J., delivered the opinion of the court.

It appears from the agreed statement of facts upon which this cause was submitted in the trial court that defendant Hall is and has been, since January 1, 1896, county treasurer of Arapahoe county; that the moneys belonging to the county, and which came into his hands as such treasurer during the year 1896, were by him deposited in various banks in the city of Denver, under contracts with them to pay interest thereon at a stipulated rate ; that under such contracts he received, during such year, as interest, the total sum of $5,212.27 ; that he placed such interest to the credit of the county treasurer's fee fund on the books of his office as county treasurer, and has used the same in payment of his salary, and that of his deputies and assistants ; that the board of county commissioners refused to approve such action, and demanded that

such interest be placed to the credit of the county general fund, and be not used in the payment of such salaries, or any of them ; that the fees, commissions and emoluments of the office were not, for said year 1896, sufficient to pay the salary of the treasurer, and of his deputies and assistants actually necessary for the transaction of the business of the office, without the use of such interest money as a part of the fee fund, and that, even with such interest included, such fee fund was overdrawn to a small amount.

The county instituted this suit for the recovery of such interest money so received and paid out in salaries, and upon trial judgment was in favor of the defendant. From this the county appeals.

There is no charge whatever of misconduct or bad faith against the treasurer, nor is any question raised as to his right to make the contracts with the banks, nor as to any misappropriation of the money, if it could be properly credited to the fee fund. Neither is the ownership of the interest money in dispute, it being admitted by the defendant, and being at all times so treated by him, that it was the property of the county.

It is conceded that the sole question to be determined by this court is : " Are the moneys received by a county treasurer in this state, as interest upon county funds deposited by him under contracts made by him with the banks in which the same are deposited, applicable to the payment of his own salary and the salaries of his deputies and assistants ? "

Section 15, article 14, of the constitution, is as follows :

" For the purpose of providing for and regulating the compensation of county and precinct officers the general assembly shall by law classify the several counties of the state according to population, and shall grade and fix the compensation of the officers within the respective classes according to the population thereof. Such law shall establish scales of fees to be charged and collected by such of the county and precinct officers as may be designated therein for services to be performed by them respectively ; and where salaries are

provided, the same shall be payable only out of the fees actually collected in all cases where fees are prescribed. All fees, perquisites and emoluments above the amount of such salaries shall be paid into the county treasury."

Under this authority, at the legislative session of 1891, an act to provide for the payment of salaries to certain officers was passed and approved. Sess. Laws, 1891, p. 307. Sections ten and seventeen of this act, so far as applicable to the matters in issue in this suit, read as follows:

Section 10 : " The county treasurers of the several counties in this state shall receive as their only compensation for their services an annual salary, to be paid quarterly out of the fees, commissions and emoluments of their respective offices and not otherwise, to wit: In counties of the first class, the sum of five thousand dollars." * * *

Section 17 : " Deputies and assistants may be employed by the sheriffs, county clerks, county treasurers, and county assessors under the direction of the board of county commissioners for said counties respectively, and shall be paid salaries out of the fees, commissions and emoluments of the office wherein employed, (except employés of county assessors who shall be paid out of the county treasury), to be fixed by the board, the selection of said deputies and employés to be made by the officer authorized to employ them."

It is contended on behalf of the county that the fees, commissions and emoluments of the treasurer referred to in the statute, and from which the salaries of himself, deputies and assistants may be paid, are such as are fixed by the statutes regulating his fees; that such fees, commissions and emoluments, as the words are there used, include only such charges as he is allowed to make for services rendered; that the interest money in question was not received by him on account for services rendered, and therefore is neither a fee, commission or emolument. It is further urged that the contracts by which the interest money was received by defendant were within the express inhibition of the statute (Sess. Laws, 1889, p. 298), and that, by the terms thereof, he could not derive any

benefit or advantage therefrom, directly or indirectly; that
such interest belonged absolutely to the county by virtue of
such statute, and that it could not properly be credited to the
fee fund, for the reason that thereby the treasurer would re-
ceive a direct benefit, being permitted to draw thereon for
the payment of the salaries of himself and assistants; that it
was not an emolument, within the intent and meaning of the
statute. It is claimed by defendant that the interest received
was an emolument of the office, and that hence he had a clear
right to apply it to the payment of the salaries of himself and
of his employés.

In the interpretation of a statute, it is a fundamental rule
and an indispensable requisite to first inquire what object
was sought to be accomplished by it. The intent of the stat-
ute is the law, and general words may be restrained to it, and
those of a narrower import may be expanded to embrace it
to effectuate that intent. Sutherland Stat. Con., sec. 218;
Endlich, Interpretation of Statutes, sec. 73; *People v. May*,
9 Colo. 85; *Rogers v. The People*, 9 Colo. 455; *Carlisle v.
Pullman Car Co.*, 8 Colo. 327; *Omar v. Soper*, 11 Colo. 386;
*Murray v. Hobson*, 10 Colo. 72.

Prior to the passage of the salary act above referred to,
officers were permitted to appropriate and convert to their
own use all fees, commissions, perquisites and emoluments
received by them while holding their respective offices.
Under this system the receipts of officers, in some instances,
might amount to very large sums in the aggregate, and
thereby enable them to receive as compensation for their pub-
lic services amounts vastly in excess of the value of those
services. Every fee, commission, perquisite or emolument
attached to a public office being essentially a tax, this condi-
tion of affairs would entail a needless and onerous burden
upon the people. It was also a matter of public notoriety
and common belief, founded in substantial reason, that the
allowance of excessive compensation to public officials tended
to produce political corruption and encourage the perpetra-
tion of frauds at elections. The chief object of the salary

act was to guard against and prevent these evils.   To accomplish this purpose, the statute fixed a specific salary for each official, payable only out of the fees, commissions and emoluments of his office.   It treated all such fees, commissions and emoluments of the office as the money of the county, requiring them to be paid to the county treasurer, and permitting them to be disbursed as other county revenues, subject only to a qualified right of property therein of the officer paying them over, limited to the amount of his salary, together with that of his necessary assistants employed under the direction and with the consent of the county commissioners, and the incidental expenses of his office.   It in effect compelled all persons elected or appointed to any of the offices specified to take it *cum onere*.   Its evident intent was to make each office " pay its own way," by requiring the officer to look for his compensation and reimbursement for moneys expended in the conduct of his office to the fees, commissions and emoluments thereof.   If these were insufficient, he must bear the loss.   The act did not offer a premium upon fraud, incompetency or indolence by permitting the county commissioners to make up from the public funds any deficit in salaries occasioned by insufficient receipts of the office.   In this view, we think it was clearly the intent of the legislature that all proper receipts of an office should be subject to the payment of its salaries and expenses.   The words " fees " and " commissions " have each a definite and settled meaning, which is fixed by the legislature itself in the act concerning fees adopted at the same session with the salary act.   Sess. Laws, 1891, p. 200.

It is true, however, that sometimes an officer may be called upon to perform services in the line of his statutory duty, which are not specified in the law regulating his fees, but he is not precluded from making a reasonable charge therefor by reason of this fact.   *Roberts v. The People*, 9 Colo. 458; *Garfield County v. Leonard*, 3 Colo. App. 576.

The word " emoluments," as it appears in the statute in question, was clearly intended, in our opinion, to be taken in

a general and comprehensive sense, so as to embrace all other proper receipts of the office not included within the terms "fees" or "commissions," as generally defined and understood. Every word in the law, whether constitutional or statutory, must, if possible, be given some meaning. *McClain v. The People*, 9 Colo. 193 ; Sutherland, Stat. Con., sec. 239.

The very frequency of the use of this word in the act under review absolutely precludes the idea of its having been intended to convey no meaning. To hold that "emoluments," as used and in the connection in which it appears in this statute, means any accretion, increment, gain or profit to the office, is, we think, manifestly in accord with common sense and common usage, as well as with the established rules for the interpretation of the English language and for the construction of statutes.

We are equally clear, however, that in order to entitle an official to any benefit from an emolument to his office, which can be enforced under the law or by the courts, it must be legitimate and lawful. Even if it be not essential that it should be derived from the performance of a duty imposed, or an act permitted by the statute, it must at least be free from the taint of violation of the law. It appears from the agreed statement of facts in this case that the interest money received by defendant accrued by virtue of contracts made by him as treasurer with certain banks in the city of Denver upon deposits by him in said banks of "moneys belonging to said county, and which came into his hands as treasurer of said county during the year 1896." There is no contention that either the deposits or contracts were authorized by the county commissioners. The law nowhere makes it the duty of the county treasurer to loan out or deposit the county funds. On the contrary, it expressly prohibits the former, and also all contracts for the latter, whereby any benefit or advantage, directly or indirectly, would accrue to the treasurer. Sections three and four of an act in relation to public funds, approved April 17, 1889, and ever since in force, read as follows :

" SEC. 3. If any such officer, agent or servant shall make any contract or agreement with any person or persons, bodies or body corporate, or other association, by which such officer, agent or servant, is to derive any benefit or advantage, directly or indirectly, from the deposit with such person or persons, body or bodies corporate, or other association, of any moneys or valuable securities held by such officers, agents or servants, by virtue of his office, agency or employment, such contract shall, as to such officer, agent or servant, be utterly null and void ; but the person or persons, body or bodies corporate, or other association, shall be liable to the county, city, town, township or school district where funds are deposited, in an action for the recovery of all such benefits or advantage as would, by the terms of such contracts or agreement, have accrued to such officer, agent or servant ; and payment to the officer, agent or servant shall not protect the person or persons, body or bodies corporate, or other association, against an action of recovery brought by the county, city, town, township or school district whose funds are so deposited."

" SEC. 4. Any such officer, agent or servant who shall make any such contract or agreement as described in the last section of this act, or who shall receive any benefit or advantage, directly or indirectly, from the deposit of any money or valuable security held by him as such officer, agent or servant, or over which he has control, care or supervision, by virtue of his office, agency or service, shall, upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year or by fine not less than five hundred (500) dollars."   Sess. Laws, 1889, p. 298.

Even if it should be admitted, and such appears to be unquestionably true, that it was the intention that the benefit derived from these contracts should inure solely to the county and not to the defendant, yet the indisputable fact remains that if the interest received be credited to the fee fund, and disbursed in the payment of the salaries of himself and of his subordinates, he would receive a material, direct and substantial benefit therefrom.   But for this, neither

he, his deputies nor assistants would receive so much com-
pensation for their services rendered.

The last cited act was in force at the time of the enact-
ment of the statute in reference to fees and salaries at the
legislative session of 1891, and it is to be conclusively pre-
sumed, in the absence of any modification, amendment or
repeal, in terms or by implication, that the later act was
framed in consonance with and with reference to the provi-
sions of the former. It cannot be held that by the use of the
word "emoluments" in the salary act the legislature in-
tended to permit the use of money so received for the pur-
pose expressly prohibited by another act, and declared to be
a penal offense. Such a conclusion would be subversive of
good morals and contrary to public policy. It is more in
accord both with the reason and letter of the law to hold, as
we do, that the lawmakers did not intend the word to in-
clude any gain, profit or accretion from which the treasurer
was expressly forbidden by another statute to derive any
benefit or advantage. It follows, therefore, under the agreed
facts in this case, that the interest received by defendant
from the deposit of the county funds cannot be credited to
his fee fund. If paid into the county treasury, it cannot be
used in payment of the salary of the treasurer, nor that of
any of his deputies or assistants. If these contracts for in-
terest had been entered into by direction or under authority
of the county commissioners, an entirely different question
might be presented. These views are decisive of the only
question presented, or which we can consider on the record
before us.

It is strenuously insisted by counsel for defendant that if
it be held the interest earned upon deposit of county money
cannot be treated as an emolument of his office, then it be-
longs absolutely to the defendant, and cannot be recovered
in this or any other action. In support of this they rely
upon the authority of *State v. Walsen*, 17 Colo. 170, and
*Gartley v. The People*, decided by our supreme court at its
present term. We are precluded, however, from consider-

ing the questions of the ownership of the interest money, because it is conceded by the agreed statement of facts upon which this cause has been submitted that it is the property of the county. The defendant treated it as such by paying it into the county treasury. The fact that he credited it on his books as county treasurer to the "fee fund" does not avoid this conclusion. This constituted a payment into the county treasury, for the accounting for which he would be held responsible, as fully and completely as if he had credited it to the "general fund."

*Airy v. The People*, 21 Colo. 145, is not similar in its facts, nor are its conclusions applicable. In that case the defendant, a county clerk, was prosecuted upon an information for failure to make the monthly reports to the county commissioners of the fees collected in his office, as required by law, and also for his failure to pay over such fees to the county treasurer. It appeared that the fees collected did not, at the time of the filing of the information, equal the sum allowed by the statute as his salary. The court held that the fees collected are the property of the officer until the amount thereof equals that of his salary; that it is only the excess or surplus of his fees above his salary which, by the constitution and the statute, belongs to the county, and which the legislature could compel an officer to pay over to the treasurer. The question did not arise and was not considered as to what the rights of property in the money would have been if he had paid his fees into the treasury, nor as to how he could have asserted his rights. It by no means follows from this opinion, or on principle, that if he had paid the fees into the treasury, he would have had an absolute property right therein.

The sole question raised by the agreed statement of facts in this case is as to the proper application of the interest money received by the defendant. The whole gist and substance of the controversy is set forth in the fourth and fifth clauses of this statement, which read as follows:

"Fourth—That the said Frank Hall, as county treasurer

has placed such interest so received on such bank deposits to the credit of the county treasurer's fee fund, in his office as county treasurer, and has used the same in payment of the salary of the treasurer and the deputies and assistants in his office as such treasurer."

"Fifth—The board of county commissioners has refused to approve such action upon the part of said county treasurer, and has demanded that such interest so received be placed to the credit of the county general fund, and not used in payment of the salaries of the treasurer or of his deputies and assistants."

It is apparent from this that the sole question submitted to the adjudication of the court, the money having been paid into the treasury, is whether or not the money so paid in was applicable to the payment of the salaries of the treasurer and his assistants. Having answered this in the negative, we must decline to consider or express our opinion as to other questions suggested in the brief of counsel, but not raised by the record.

It is conceded by the county that no assistance was employed in the office of defendant except such as was necessary, and that its efficiency would have been crippled but for the application of this interest money to the satisfaction of its legitimate expenses. Whilst this condition of affairs appeals strongly to the sympathy of the individual members of the court, yet it cannot justify a usurpation by the court of legislative functions. The sole duty of this court is to interpret the law as it is found upon the statute books, in accordance with the intent of its framers, if this can be ascertained by the well-settled rules of statutory construction. It has no power to strain or vary the meaning of the statute to relieve isolated cases of hardship. The court feels it proper to say, however, that none of the facts in this case show the slightest desire or attempt on the part of the defendant to evade or violate any law, or to reap any personal benefit or advantage from the execution of his trust, other than that expressly given him by the statute, as he construed it. He

has attempted to make his office realize all the revenue possible, and to use it for the benefit of the public. His conduct has been free from any taint of fraud.

For the reasons assigned the judgment herein will be reversed.

*Reversed.*