536 P.2d 855 (1975)
Edward CONRAD et al., Plaintiffs-Appellees,
v.
CITY OF THORNTON, a Colorado Municipal Corporation, Defendant-Appellant.
No. 74-483.
Colorado Court of Appeals, Div. III.
April 1, 1975.
Rehearing Denied April 22, 1975.
Certiorari Granted July 7, 1975.
*857 Brenman, Sobol & Baum, Donald E. McMichael, Stephen N. Berkowitz, Denver, for plaintiffs-appellees.
Orrel A. Daniel, City Atty., Leonard H. McCain, Edward A. Brown, T. William Wallace, Asst. City Attys., Brighton, for defendant-appellant.
Selected for Official Publication.
BERMAN, Judge.
The City of Thornton (City) appeals from a judgment ordering it to refund certain contributions made to a pension fund by appellees. We reverse.
The undisputed facts show that the City maintains a firemen's and policemen's pension fund pursuant to § 31-30-301 et seq., and § 31-30-401 et seq., C.R.S.1973 (Ch. 139, Articles 49 and 59, C.R.S.1963). The appellees were employees of either the police or fire department of the City, and, as such, were required by statute to make monthly contributions to their respective pension fund, which they did. In 1968, the board of the firemen's pension fund adopted bylaws which provided that upon termination of employment an employee would have his contribution to the pension fund refunded to him.
It is conceded that the board of the policemen's pension fund had not adopted a similar bylaw, but, nevertheless, the City adopted the practice of refunding to each employee, upon termination of employment, the contribution that employee had made to the policemen's pension fund. It is also conceded by the parties that "the employees of both the fire department and the police department made contributions to the Firemen's Pension Fund and the Policemen's Pension Fund respectively," and that the withholding taxes of each employee of both the fire and police departments included the tax on the amount each employee contributed to their respective pension fund.
The City admits that, upon a termination, it had consistently refunded to each terminated employee that employee's contribution to his particular pension fund, and that it was the understanding of each employee at the time of employment that such refunds would be made. This practice prevailed until the decision of this court in Benson v. City of Sheridan, 31 Colo.App. 540, 506 P.2d 401, decided December 19, 1972. Thereafter, having terminated their employment with the City, the appellees made their demand for refund, but the City refused, and this action followed.
The trial court found that there was a contractual agreement to refund the contributions and that as a result of that contract the City was obligated to make the refund; it therefore directed the City to make the appropriate refunds.
The City contends that the trial court erred in its ruling that it was obligated to make the refunds. The City asserts that, by virtue of Benson v. Sheridan, supra, and Huff v. City of Colorado Springs, Colo., 512 P.2d 632, it has no authority to contract for such refunds, and further, that any contractual agreement previously made by the City with appellees was nullified and that any attempt to compel refunds would in effect be the enforcement of an agreement prohibited by law.
Appellees, on the other hand, urge that Huff is inapplicable, or if applicable that it tends to support their position; and, as further support for their position, they cite Derby v. Police Pension & Relief Board, 159 Colo. 468, 412 P.2d 897, in addition to Benson v. Sheridan, supra.
In Huff, the latest ruling on the subject, the Supreme Court definitively held that the matter of firemen's pensions was of statewide concern and that inconsistent provisions of a home rule city's ordinance *858 are superseded by the Firemen's Pension Act, § 31-30-501 et seq., C.R.S.1973 (1969 Perm.Supp., C.R.S.1963, 139-80-1 et seq.).

I.
Conrad is the only appellee who served in the fire department, and his period of employment was from February 28, 1972, to August 15, 1973. The applicable statutes, 1969 Perm.Supp., C.R.S.1963, 139-50-6(1)(c) and (d), (§ 31-30-406(b) and (c), C.R.S.1973), in effect during his period of employment, show that the firemen's pension fund consists of, among other funds not here relevant, the following:
"(c) All moneys, fees, rewards, or emoluments, of every nature and description, that may be paid or given to said fund;
(d) All moneys derived from employee assessment as provided for in sections 139-50-5(3) and (4), as amended, which shall be collected monthly by the officer of the city, town, city and county, or fire protection district concerned whose duty it is to issue pay warrants, or other proper officer."
1969 Perm.Supp., C.R.S.1963, 139-50-5(3), provides that in cities of the population of Thornton, there shall be levied on each member of the fire department "an amount not to exceed six percent of their monthly salaries," which is to be matched by an equal contribution from the City.
Although the parties have also conceded that the contributions which each of the appellees made to their respective pension funds were made "in accordance with an employment agreement" between the City and appellees, we do not attach any significance to this. The agreement regarding the payment of the employees' assessments contracted for no more than what was required by statute.
1969 Perm.Supp., C.R.S.1963, 139-50-12 (§ 31-30-412, C.R.S.1973), mandates that "[t]he [pension] fund shall be kept, secured, and distributed for the purposes of pensioning and protecting [among others, firemen retired because of age] and for no other purpose whatsoever. . .." The quoted portion of this statute, first enacted in 1917, has remained unchanged since that date and evidences an unmistakable intention on the part of the legislature that firemen's pension funds are inviolate and cannot be used for any purpose other than that for which they were intended, namely, the payment of pensions. They may not be distributed for the purpose of making refunds of employee contributions to the pension fund to those members of the fire department who voluntarily terminate their employment.

II.
The policemen, like the firemen, contribute part of their salary monthly into the City's "Policemen's Pension Fund." Section 31-30-320, C.R.S.1973 (C.R.S.1963, 139-49-21). The pension fund is to be "sacredly kept, secured, and distributed for the purpose of pensioning and protecting [among others, policemen retired because of age] and for no other purpose whatsoever. . .." Section 31-30-313, C.R.S.1973 (C.R.S.1963, 139-49-14). Except for the use of the word "sacredly," this language is identical to that used in the firemen's pension fund statute previously quoted.
Section 31-30-307(1)(b), C.R.S.1973 (C. R.S.1963, 139-49-8(1)(c)), however, provides that the policemen's pension fund shall consist of, among other moneys not pertinent here, "[a]ll moneys, fees, rewards, or emoluments, excepting policemen's salaries, of every nature and description that may be paid or given to said departments or any members thereof." The underscored portion is clearly different from the language used under the firemen's pension fund statute. We are convinced that the choice of language used by the legislature in this statute does not compel a different ruling than the one we applied under the firemen's pension statute. We do not view the language "excepting policemen's salaries," as anything other than an attempt to distinguish the fact that *859 salaries are not to be considered the same as "fees, rewards or emoluments." "Emoluments" has been defined as "that which is secured as a compensation for services, or which is annexed to the possession of office as salary, fees and perquisites." Black's Law Dictionary 616 (rev. 4th ed. 1968) (emphasis supplied), and see Board of County Commissioners v. Hall. 9 Colo. App. 538, 49 P. 370.
We are convinced that the emphasized words do not mandate a conclusion different than that we held applicable to the firemen's pension fund statute. Section 31-30-319, C.R.S.1973 (C.R.S.1963, 139-49-20), provides that municipalities of the size of Thornton have the power to pay from their general funds into the policemen's pension fund a monthly sum not to exceed five percent of the monthly salaries of their total police department. Section 31-30-320, C.R.S.1973 (C.R.S.1963, 139-49-21), provides that when a city makes the contribution from its general funds into the policemen's pension fund under XX-XX-XXX, "the members of such police department shall from their respective monthly salaries, contribute monthly into the municipality's policemen's pension fund identical percentages monthly of their respective monthly salaries . . .."
As we pointed out above, once moneys go into the pension fund they become inviolate, and while the statutes governing policemen's pension funds are not a model of clarity, when their various sections are read together it is clear that the legislature did not intend to treat the composition of the two funds differently, and we so hold. The appellees, other than Conrad, were all employed while these statutes were in effect, and they, too, are bound by the same ruling we applied to Conrad.
In determining the intent of the legislature in the enactment of a statute, it is presumed that a just and reasonable result is intended, and that the public interest is favored over any private interest; and, in making that determination, we may consider, among other things, the consequences of a particular construction. Sections 2-4-201 and 203, C.R.S.1973.
The consequences of our holding here meet these criteria. And, to hold otherwise would mean that a policeman, who reached the appropriate age and who has served for a period of 20 years in any of the police departments in the state, under agreements for refunds such as appellees here have, and who has previously withdrawn all of his contributions to the pension fund pursuant to such agreements, would be able to draw a full pension by having made a total unrefunded contribution to the fund for only one year preceding his eligibility for retirement. Compare § 31-30-322, C.R.S.1973 (C.R.S.1963, 139-49-23) with § 31-30-314, C.R.S.1973 (C.R. S.1963, 139-49-15). Also see Benson v. Sheridan, supra. That such a consequence would be inequitable and detrimental to the public interest is obvious.

III.
Appellees urge, however, that Benson v. Sheridan, supra, and Derby v. Police Pension & Relief Board, supra, stand for the proposition that where a "contractual agreement" for the refund of their contributions to the pension fund does exist, the City has the power and the duty to make such refunds. However, we find Huff controlling as to this contention. Until that decision, it was generally agreed that the matter of policemen's and firemen's pensions were a matter of exclusively local and municipal concern. Huff decided to the contrary and struck down an ordinance in conflict with the state statute. Pursuant to that ruling, we hold that no bylaw adopted by the board of trustees of the City's firemen's pension fund, nor any agreements made between the City and appellees, providing for a refund of policemen's and firemen's contributions to their pension fund can stand in opposition to the *860 state statutes here discussed. See Van Cleave v. Board of County Commissioners, 33 Colo.App. 227, 518 P.2d 1371.
We believe here, as we did in Van Cleave, that "justice, equity and the public good are best served" by precluding any lawsuits relative to the recovery of any such refunds which might have been paid erroneously prior to this decision; hence, this decision is not to be construed as serving as a basis for lawsuits arising out of refunds previously made.
Judgment reversed and cause remanded to the district court with directions to dismiss appellees' complaint and enter judgment in favor of the City of Thornton.
SMITH and RULAND, JJ., concur.