The Honorable Anne McGill Gorsuch State Representative Chairman, Committee on Hazardous Waste State Capitol Building Denver, Colorado 80203
Dear Representative Gorsuch:
I am writing in response to your September 8, 1980 request for an attorney general's opinion on the interpretation of language relating to solid waste facility siting and disposal and on the interpretation of language pertaining to the authority of the Department of Health to administer federal monies.
QUESTIONS PRESENTED AND CONCLUSIONS
You have presented the following questions:
1a. Under the provisions of C.R.S. 1973, 30-20-106, what constitutes the ". . . private dumping of one's own solid wastes on one's own property. . . ."?
1b. Under said section, what type of generator of solid waste, which dumps its own solid wastes on its own property, would be subject to the provisions of the solid waste disposal law, part 1, article 20, title 30, C.R.S. 1973? What is the legal basis for your distinction between types of generators?
 My conclusion is that the exception provided in C.R.S. 1973, 30-20-106 for "private dumping of one's own solid wastes on one's own property" refers to the on-site disposal by an individual of wastes resulting from his own residential, noncommercial activities. All other persons or entities if not otherwise exempted are subject to the provisions of the solid waste law.
2. What regulatory authority, if any, do the boards of county commissioners and the Department of Health have with respect to the disposal of liquid hazardous waste under the solid waste disposal law (part 1, article 20, title 30, C.R.S. 1973)? Please explain the source of any such authority.
 My conclusion is that the Department of Health and the boards of county commissioners have the authority to control, limit and preclude the disposal of liquid hazardous waste at a solid waste disposal site. This includes requiring the proper design and engineering of a solid waste disposal site which is to receive or is receiving liquid hazardous wastes.
3. Are discarded liquid materials included in the definition of "solid wastes" contained in C.R.S. 1973, 30-20-101(6).
 No. It is my conclusion that discarded liquid materials are not included in the definition of "solid wastes" contained in section 30-20-101(6), C.R.S. 1973.
4. Does section 25-1-108(1)(f), C.R.S. 1973, in addition to authorizing the Department of Health to accept, use, disperse, and administer federal monies, authorize the Department of Health to incur any future obligation on behalf of the state? If so, please define in detail the nature of such obligations which are authorized.
 No. Section 25-1-108(1)(f) does not authorize the Department of Health to incur any future obligation on behalf of the state insofar as the Department of Health cannot assume a hazardous waste program under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. (RCRA) without additional enabling legislation.
ANALYSIS
1a. and 1b. C.R.S. 1973, 30-20-106 provides:
 30-20-106. Private disposal prohibited — when. No private dumping of solid wastes shall be made on any property within the unincorporated portion of any county except on or at an approved site and facility; but private dumping of one's own solid wastes on one's own property shall not be subject to the provisions of this part 1 as long as it does not constitute a public nuisance endangering the health, safety, and welfare of others and as long as such dumping is in accordance with the rules and regulations of the department.
Under that statute, all "private dumping" of solid wastes within the unincorporated areas of a county must be done at an approved disposal site and facility. However, the statute also provides that private dumping of one's own solid wastes on one's own property may be done without obtaining a certificate of designation from the board of county commissioners as long as such dumping does not constitute a public nuisance or fail to comply with the rules and regulations of the Department of Health. The term "private dumping" is not defined in the statute nor has the term been defined by the Colorado courts. In addition, Colorado has no other legislation which contains this phrase.
In my opinion, the phrase "private dumping of one's own solid wastes on one's own property" is ambiguous. It is fundamental that in construing an ambiguous statute, the following may be considered in order to ascertain legislative intent: (1) the objective of the statute; (2) the circumstances under which the statute was enacted; (3) the legislative history; and (4) the consequence of a particular construction. C.R.S. 1973, 2-4-203. Further, public interest is to be favored over private interest.Conrad v. City of Thornton, 36 Colo. App. 22, 536 P.2d 855
(1975), rev'd on other grounds, 191 Colo. 444,553 P.2d 822 (1976).
The Solid Waste Disposal Site and Facilities Law, C.R.S. 1973,30-20-101 et seq., was first passed in 1967 in order to provide standards for the location and operation of landfills for the disposal of solid wastes. The act provides county commissioners with the authority to regulate and restrict landfill activities in the unincorporated portions of their respective counties. In essence the act requires that any person who desires to operate a solid waste facility in the unincorporated portion of a county must obtain a certificate of designation from the relevant board of county commissioners with the approval of the Department of Health. C.R.S. 1973, 30-20-102, 103, 105. The statute also gives municipalities control over solid waste disposal sites within their jurisdiction. C.R.S. 1973, 30-20-107, 108. The construction and operation of the site must be in conformity with the pertinent rules and regulations promulgated by the Department of Health. C.R.S. 1973, 30-20-104, 109, 110. The only exception to this broad grant of authority is found in C.R.S. 1973, 30-20-106, which pertains to "private dumping."
In the act as it originally was passed in 1967, the phrase in question referred to "private dumping of solid wastes on one's own property." In 1971, that phrase was specifically amended by the legislature with the addition of the words "one's own." 1971 Session Laws, p. 343. The phrase now refers to "private dumping of one's own solid wastes on one's own property." C.R.S. 1973,30-20-106, as amended.
Each and every word of a statute must be given meaning, if possible. Thomas v. Grand Junction, 13 Colo. App. 80
(1889). Private disposal of one's own wastes on one's own property, then, means something more restrictive thandisposal of one's own wastes on one's own property. Permitting the "dumping of one's own wastes on one's own property" would clearly allow anyone to dispose of its own wastes on its own property; by limiting the exception to those engaged in "private dumping", the statute was clearly intended to apply to more limited circumstances.[1]
There are two arguments advanced in favor of a restrictive interpretation of the phrase "private dumping of one's own solid wastes on one's own property."
One suggested interpretation is that the term "private dumping of one's own solid wastes on one's own property" refers to all on-site disposal of solid wastes by one whose site is private,e.g., not open to the public to dispose of their wastes. Under this interpretation, on-site disposal would be basically unrestricted so long as the person dumping the waste did not receive others' wastes for disposal.
I have rejected this interpretation of the statute since such interpretation would undermine the entire thrust of the Solid Waste Disposal Sites and Facilities Act, which is to control and to regulate the siting and operation of solid waste disposal sites and facilities. If all on-site disposal were basically unregulated, except on-site disposal by those accepting wastes commercially, e.g., in the waste disposal business, then no commercial or industrial operation, regardless of its size or the amount or type of waste which it generates, would be subject to general control under state law insofar as the disposal of its waste is concerned.
Industries which practice on-site disposal include, but are not limited to: precious metal mining, the operation of which results in formation of such chemicals as sodium cyanide and sodium hypochloride. Sodium cyanide leaches cyanide if it is deposited in streams; sodium hypochloride is deadly to aquatic life. Nonprecious metal mining, e.g., molybdenum, results in the deposit of heavy metals such as arsenic, lead, iron, magnesium, cadmium and nickel. Without the proper design of a facility, all of these chemicals could be discharged. Coal power plants, of which there are 5 or 6 large ones in Colorado, generate flyash. Flyash contains such radioactive minerals as thorium and uranium, in addition to other heavy metals such as arsenic, lead, sodium, potassium, calcium, chloride, sulphates, iron, magnesium, cadmium, mercury. It also causes acid (pH) imbalance in water. The oil shale industry produces processed oil shale residues (waste rock) which is 70% of the total volume of oil shale. It contains, among other things, fluoride, boron, molybdenum, and selenium, and causes changes in pH. Industrial sludges, resulting from water quality and air quality treatment facilities, contain cadmium, arsenic, sulfates and chlorides.
In addition to these industries, there are hundreds of others,e.g., the petrochemical industry and pesticide manufacturers, which would be permitted, under this interpretation, to dispose of their wastes on site, without approval by the state or local authorities under the Solid Wastes Law. For example, sludges from solutions used for cattle dipping, to eradicate scabies, contain the highly toxic pesticide, toxaphene. The landowner could dump these sludges on the ground and walk off and leave them causing potential damage to drinking water supplies and surrounding flora and fauna.
I note also that in 1971 the legislature specifically deleted the exemption for mining wastes, metallurgical slag and mill tailings from the coverage of the Solid Waste Act, C.R.S. 1973, 30-20-101(6). See also, C.R.S. 1973, 30-20-102(2) (Repealed, L. 77 p. 286). It seems incongruous that the legislature would add mining wastes, mill tailings and metallurgical slag to the coverage of the Solid Waste Act in sections 101 and 102 while at the same time allowing them to remain exempt under section 106 and such a construction should be avoided. C.R.S. 1973, 2-4-203(1)(e). I do not think that the legislature would engage in a meaningless act.
In addition to allowing all on-site disposal to operate without approval, this interpretation would completely divest the local governments of the authority they were otherwise granted under the Solid Waste Act to determine the number, size, location and type of operation of each and every disposal site within their respective jurisdictions. This statute should not be interpreted in such manner so as to result in the removal of authority which is otherwise so specifically granted. C.R.S. 1973, 2-4-203(1)(e).
In reaching my conclusion, I have also considered the general rule of statutory construction that a change in language usually imports a change in the meaning of a statute. By adding the words "one's own" in 1971, the legislature was apparently restricting the exception for private disposal to an even narrower class of persons. Interpreting the phrase "private dumping of one's own wastes on one's own property" to permit on-site disposal by everyone except those who are in the commercial waste disposal business, e.g., those who open their sites to the disposal of others' wastes, renders the term "private" to be without significance. The legislature, by adding the words "one's own" to the phrase in 1971, clearly restricted the application of that phrase to those who dispose of only their own wastes, and who are, e.g., not open to the public to receive their wastes. If the words "private dumping" had referred to "those who are not in the commercial disposal business," then the addition of the words "one's own" would have been unnecessary and merely redundant.
I note further that the title of the section in question isPrivate disposal prohibited — when. This indicates that the purpose of the section is in general to prevent private disposal. An interpretation of the statute which permits almost all on-site disposal to be operated without approval conflicts with that title. Considering the intent of the legislature to regulate and to control solid waste disposal, and the ambiguity of the section, the title should control.See Davis v. Conour, 178 Colo. 376, 497 P.2d 1015
(1972).
I also consider that it is highly questionable as to whether "private dumping of one's own wastes" could refer to the generation and disposal of wastes in the course of one's business. Wastes generated in the commercial production of goods and services which are available to the general public do not appear to be "private" or "one's own" within the plain meaning of those terms.
The second suggested interpretation is that the statute at issue refers to on-site disposal done by a nongovernmental agency. In my opinion, the foregoing considerations apply with equal force to this interpretation.
As stated above, public policy requires a limited reading of that exception. Interpreting the word "private" to refer to "nongovernmental" would permit all persons other than governmental agencies, including all business and industries, to engage in unapproved on-site dumping. This interpretation would permit hundreds of disposal sites of all types and quantities of waste to go basically unregulated and this is clearly against the public interest. It is well-accepted that:
 (I)n construing a grant of legislative powers, if there be an ambiguity or doubt arising from the terms used, or if the grant be susceptible of two constructions, the doubt must always be resolved, and the grant constructed in favor of the public.
Thomas v. Grand Junction, 13 Colo. App. 80 (1889).
This interpretation would, as stated above, divest the local authorities of the ability to control the size, location and type of operation of each disposal site as is otherwise granted specifically to them in the statute, and is inconsistent with the rest of the statute insofar as disposal by governmental agencies is specifically discussed in C.R.S. 1973, 30-20-107 and 108.
I can ascertain no logical reason why the legislature would bother to distinguish "private" as opposed to "governmental" or "public" disposal of one's own wastes on one's own property. Public agencies that run disposal operations, e.g., county dumps, are not disposing of their own wastes under any circumstances. Again, if the intent of the statute was to permit all on-site disposal except that done by a governmental entity, then the word "private" would be totally unnecessary.[2]
Considering this, and the rules of statutory interpretation which require that in interpreting a statute the interests of the general public be favored over any specific interest, C.R.S. 1973, 2-4-201(e), and that all phrases and terms in a statute should be given a liberal construction, C.R.S. 1973, 2-4-212, it is my opinion that the exemption for private dumping of one's own waste on one's own property creates an exception for the individual to dispose of his own residential, noncommercial trash on his own property.
Because the statute and the pertinent amendments were enacted prior to the institution of taping all legislative hearings, there is no formal legislature history to examine. However, the Legislative Drafting Office does have copies of the original version of the bill which was sent to that office in 1966, and which ultimately was introduced on the floor and passed in 1967. I have examined this document in reaching my conclusion.
The reference to "private dumping" first appears in this initial draft of the bill submitted to the Legislative Drafting Office by State Senators Bradley and Jackson as follows:
 Section 1. Designation and approval of solid waste collection and disposal sites and facilities required.
 (4) No waste collection and disposal site or facility shall be operated in the unincorporated area of any county unless such site or facility has been designated as an approved solid waste collection and disposal site or facility by the board of county commissioners of the county in which such site or facility is located. No private dumping or disposal of trash or rubbish shall be made on any property within the unincorporated portion of the county except on a site approved by the board of county commissioners; but private dumping of trash or rubbish on one's own property shall not be prohibited
so long as such practice shall not constitute a public nuisance endangering the health, safety, and welfare of others.
(Emphasis added.)
The draft bill does not contain a "definitions" section. However, in a later section of the draft, the proposed bill states:
 The State Department of Public Health shall establish and enforce sanitary standards relating to the public health aspects involved in the temporary storage, collection, transportation and final disposal of solid wastes, to include but not be limited to refuse, garbage, ashes, rubbish, toxic substances and flammable substances, hereinafter referred to as solid wastes, . . . .[3]
(Emphasis added.)
When the bill was reorganized by the Legislative Drafting Office, the above definition was adopted, incorporating the exception for mill tailings, etc. cited below. The bill as passed contained this definition. C.R.S. 1963, 36-23-1(2).
The drafting office then took all references to specific solid wastes in the draft and substituted the general term "solid wastes." The exemption for private disposal was conformed to read:
 Section 6. Private disposal prohibited — when. No private dumping of solid wastes
shall be made on any property . . . but private dumping of solid wastes on one's own property shall not be prohibited . . . .[4]
What apparently was overlooked in conforming the language in section 6 was that "trash and rubbish" was a term of art utilized in the regulation of garbage collection; it was not synonymous with and encompassed a much narrower category of wastes than the definition which was taken from the longer list of wastes which came later in the draft bill. "Trash and rubbish," as the term was commonly used, referred to nontoxic, nonliquid junk,i.e., paper, household garbage, refuse, etc. The intent of the original private disposal section, in my opinion, was to exempt the disposal of common trash on one's own property.
This would not be the only time the legislature has recognized the distinction between private and commercial operations concerning their respective impact upon environmental health and quality. In 1979, the legislature amended the Solid Waste Act to allow counties to permit the noncommercial burning of trash under certain circumstances. Burning of trash had theretofore been generally prohibited. C.R.S. 1973,30-20-110(1)(f), as amended. The legislature has indicated, in separate areas of the Solid Waste Act, that certain activities which it deems should otherwise be regulated, are permissible, but only on a small scale.
2. C.R.S. 1973, 30-20-101 et seq. provides authority for the board of county commissioners and the Department of Health to regulate the selection of solid waste disposal sites and to regulate the design, engineering and operation of the site. The Health Department has the specific obligation to insure that the facility is operating in accordance with its rules and regulations.
The rules and regulations specify requirements which, for example, pertain to: siting of facilities, control of surface and ground water quality, vector control, odor control, rodent control, control of air quality, proper design and engineering, proper operation, and standards for closure. 6 C.C.R. 1007-2.
The jurisdiction of the board of county commissioners and the Department of Health is triggered if the disposal site accepts and/or disposes of solid wastes.[5] As long as the site proposes to accept or does accept solid wastes, the board of county commissioners and the Department of Health have the explicit authority to regulate all aspects of the siting decision, including the determination as to whether the site is appropriate for the receipt of liquid hazardous wastes according to the criteria set forth in C.R.S. 1973, 30-20-104. Similarly, the Department of Health has the duty to regulate the operation of the facility as it affects health and the environment. Once a facility receives solid wastes for disposal, everything that is disposed at that site is subject to regulation pursuant to the certificate of designation issued to that site.
I also conclude, however, that according to C.R.S. 1973, 30-20-101et seq., because the definition of solid wastes does not include liquid wastes (see analysis of response to question 3 herein, infra at pp. 11-12), that a facility which did not and/or does not presently accept anysolid wastes is not subject to regulation under the Solid Waste Disposal Sites and Facilities Act.
This interpretation is consistent with the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. (RCRA), and its regulations insofar as EPA has determined that solid waste sites and facilities receiving small quantities of (liquid) hazardous wastes do not fall within the jurisdiction of RCRA. It was anticipated that the regulation of the disposal of these small quantities of waste would remain under the state solid waste disposal laws.
3. C.R.S. 1973, 30-20-101(6) defines solid wastes as:
 (G)arbage, refuse, sludge of sewage disposal plants, and other discarded solid materials, including solid waste materials resulting from industrial, commercial, and community activities but does not include agricultural wastes.
The meaning of the word "solid" as utilized in 30-20-101(6) is plain and unambiguous. The common, accepted meaning of the word is "having an interior filled with matter; not gaseous or liquid." Webster's Seventh New Collegiate Dictionary, p. 831. The legislature clearly was aware of the distinction between solid and liquid and knew how to include liquids if it saw fit. See, e.g., C.R.S. 1973, 25-8-805; C.R.S. 1973, 25-13-103(10).
Moreover, the original Solid Waste Disposal Sites and Facilities Act, as passed by the legislature in 1967, defined solid wastes as:
 refuse, garbage, ashes, rubbish, toxic or inflammable substances, . . .
C.R.S. 1963, 36-23-1(2) (emphasis added).
Although the term "toxic substances" would appear to include liquids as well as solids, this definition was amended in 1971 to omit any references to "toxic substances." It is evident, that in reenacting that section the legislature intended to omit liquid materials from the purview of the act.[6]
4. As a result of conversations between my staff and Martha King, an employee of the Legislative Council, it is my understanding that you wish to know whether or not the entry into a cooperative agreement by the state pursuant to C.R.S. 1973,25-1-108(1)(f) can oblige the state to enter into a state-administered federal RCRA program sometime in the future. Specifically, it is my understanding that you are concerned with a phrase in the cooperative agreement which indicates that that agreement would be entered into by the state with the intent to seek final authorization from the Environmental Protection Agency to administer the hazardous waste program under RCRA.
In that context, C.R.S. 1973, 25-1-108(1)(f) does not authorize the Department of Health to incur any future obligation on behalf of the state. Although the department has the authority to indicate that it could seek final authorization under RCRA (a statement of that intent is required by the Environmental Protection Agency), final authorization to operate a hazardous waste program cannot be actually assumed unless the legislature has enacted the requisite enabling legislation. If such legislation is not forthcoming within the time-period of the cooperative agreement, the agreement would end with no further consequences.
SUMMARY
To briefly summarize my opinion, on-site disposal by an individual of wastes resulting from his own residential, noncommercial activities is generally exempted from the Solid Waste Sites and Facilities Law. I also conclude that although "liquid wastes" is not covered by the definition of "solid waste" contained in C.R.S. 1973, 30-20-101(6), the Department of Health and the boards of county commissioners have the authority to regulate the disposal of liquid wastes at a solid waste site and facility. Finally, without additional enabling legislation, the Department of Health is without authority to oblige the state to enter into a state-administered federal RCRA program.
Very truly yours,
 J.D. MacFARLANE Attorney General
SOLID AND HAZARDOUS WASTES STATUTORY CONSTRUCTION COUNTIES FEDERAL GRANTS
C.R.S. 1973, 25-1-108(1)(f) C.R.S. 1973, 30-20-101 et seq. C.R.S. 1973, 2-4-201
C.R.S. 1973, 25-8-805 C.R.S. 1973, 2-4-212
C.R.S. 1973, 25-13-103(10)
42 U.S.C. § 6901 et seq.
HEALTH, DEPT. OF LEGISLATIVE BRANCH General Assembly
1. Dumping one's own residential, noncommercial wastes on one's own property is exempted from provisions of Solid Waste Disposal Sites and Facilities Act. 2. Disposal of liquid hazardous waste at a solid waste facility is subject to regulation under the Solid Waste Disposal Sites and Facilities Act. 3. Discarded liquid materials are not within the definition of "solid waste" in the Solid Waste Disposal Sites and Facilities Act. 4. Department of Health is not authorized under C.R.S. 1973,25-1-108(1)(f) to assume hazardous waste program under RCRA without additional enabling legislation.
[1] In the context of the statute, "dumping" and "disposal" appear to be synonymous.
[2] I note that in the definition section of the act, the term includes "private or municipal corporations." I do not find that the use of the term "private" in that context has any relevance here.
[3] In section 5(2) of the draft, the bill states:
 the term solid wastes as used herein shall not apply to mill tailings piles, agricultural wastes, mining operations or junk automobiles and parts thereof.
[4] Similarly, section 9 was changed to read that the department shall promulgate regulations involving temporary storage, collection, transportation and final disposal ofsolid wastes.
[5] The term "solid wastes" as utilized in the act does not include "liquid wastes". See analysis of response to question 3,infra at pp. 11-12.
[6] I note that the current definition of solid wastes includes "sludge." C.R.S. 1973, 30-20-101(6). Although sludge is often referred to as a "semisolid," it is technically defined as "a muddy or slushy mass, deposit or sediment" or "precipitated solid matter." Webster's Seventh New Collegiate Dictionary, p. 821. It is not a "liquid."