No. 21026.

Franklin M. Derby, et al. v. Police Pension and Relief Board of the City and County of Denver, et al.

(412 P.2d 897)

Decided April 4, 1966.     Rehearing denied April 25, 1966.

ROBERT W. SMEDLEY, ABE L. HOFFMAN, for plaintiffs in error.

MAX P. ZALL, HORACE N. HAWKINS, JR., for defendants in error.

*En Banc.*

MR. JUSTICE SCHAUER delivered the opinion of the Court.

THE parties appear here in the same order as they appeared in the trial court and will be referred to as they there appeared.

The named plaintiffs brought the action on behalf of themselves and all other persons similarly situated. The class represented in this action was defined as police officers in the classified Civil Service of the City and County of Denver, who were required to contribute a percentage of their salary to the Police Pension and Relief Fund while in active service, pursuant to the city charter and ordinance. Service of the parties plaintiff had been terminated for either voluntary or involuntary reasons at a time prior to their becoming eligible for a pension under the longevity provisions of the city charter and without otherwise qualifying for benefits provided by the charter.

The defendants are the City and County of Denver and the officials who administer the fund and make or approve the disbursements thereof.

The purpose of the instant action was to recover for the members of the class the amounts they had contributed to the fund, interest, attorney fees, costs, and for an accounting of the fund showing the exact amount of respective contributions. The record indicates that there are 124 members of the class, the date of termination of service and the amounts contributed by each up to the date of termination of service.

By stipulated pre-trial order, it was agreed, *inter alia,* that plaintiffs' complaint might be considered as separated into three distinct claims, the first thereof being as follows:

"For a legal determination, decision and opinion as to whether or not the named Plaintiffs are entitled to return of their moneys paid into the Police Pension and Relief Fund."

The pre-trial order also provided that the first claim should be first separately tried and judgment entered thereon. It was tried to the court on August 7 and 8, 1963. The court found in favor of defendants and entered judgment accordingly; it dispensed with the necessity of filing a motion for new trial. The writ of error herein is directed to the judgment.

By Article XX of the Colorado Constitution, the City and County of Denver was declared to be a home rule city, and the article provides that the officers in the classified civil service of the city "shall receive the same [their compensation] as a stated salary, the amount of which shall be fixed by the charter, * * *."

Prior to June 1, 1947, the matter of police pensions, and the circumstances under which a police officer became entitled to a pension, was governed by ordinances which provided, *inter alia,* that one of the sources of income of the Police Pension and Relief Fund, hereinafter referred to as the "Fund," should consist of:

"A monthly assessment of two per cent upon the monthly salary of such officer member or employee, to

be deducted and withheld therefrom." (Ord. 9, Ser. 1937.)

By charter amendment of June 1, 1947, it was provided that:

"Each and every member of the Denver police department in the classified service shall contribute 3½% of his salary [to the Fund]." (Sec. C5.43-3.)

During all of the time that each of the plaintiffs herein remained in the classified civil service of the Denver police department, he paid into the Fund by way of required contributions 3½% of his salary after June 1, 1947; if in such service prior to that date he paid in by way of deductions 2% of his salary. This money, by virtue of the charter, was credited to the Fund for the purpose of providing him with a pension or annuity only after his twenty-fifth year of service. The charter is silent in regard to the repayment of the sums so paid in the event the officer's period of service terminates prior to the twenty-fifth year.

It is the position of the plaintiffs that the mandatory contributions were paid in by the officers under a contractual arrangement under which they were to receive a pension in the future. Further, that since a right to a pension never matured, they are entitled to receive back the sums which they had contributed as payments for pensions which they cannot now receive, particularly since there are no provisions in the charter for the forfeiture of these payments. In their summary of argument, they contend that their percentage contributions were considerations and deposits for pensions to be received in the future; that since they will not receive pensions, the considerations and deposits are refundable and should therefore be restored to them. The plaintiffs also claim that they are entitled to repayment under the doctrine of rescission; that the officers cannot be permanently deprived of any part of their salaries, since this would result in a forfeiture of their contributions, and that the law abhors a forfeiture.

The position of the defendants is that plaintiffs cannot recover because the charter does not provide for repayment of any part of the contributions of the police officers to the Fund and, since this is a public fund impressed with a trust for public servants, it cannot be disbursed except by clear authority of the law. The defendants also assert that the fact the contributions were made for the Fund does not give an officer a vested right in the contributions, but only the right to receive a pension or other benefits on such terms as the pension system may provide. Further, that even though the deductions were made, this, in and of itself, does not entitle the officer to a refund of his contributions when he is separated from the police force under circumstances that do not entitle him to a pension.

Various phases of the issue here presented have been before this court for determination; therefore, it should prove helpful to cite some of the cases and the respective decisions of the court in chronological order. The cases in this jurisdiction as well as other jurisdictions suggest a slight historical change in the treatment of funds such as are involved in the case at bar. Notably, the change seems to be suggested in the last two decades. Unfortunately, no case has been brought to our attention giving rise to precisely the same issue which is involved in this case and therefor precedent is still lacking.

The case of *People ex rel. Albright, et al. v. Board of Trustees,* 103 Colo. 1, 82 P.2d 765, involved the question of compulsory assessments on salaries of municipal employees for the purpose of building up a pension fund. The court held that such assessments do not become the property of the employees but remain the property of the municipality and a part of the public funds. The court further held that disposition of the funds was subject to the authority levying the assessment. The court stated further that the prospective pensioners who had not fulfilled conditions entitling them to benefits from

a pension fund had mere expectancies which did not constitute vested rights.

The case of *Bedford, State Auditor v. White, et al.,* 106 Colo. 439, 106 P.2d 469, held that a pension is not a matter of contract and not founded upon any legal liability giving an employee a vested right thereto. The court reiterated the historical premise that a pension was a mere gratuity given by the government, which may at any time change the amount thereof or revoke it altogether. The court further held that where partial payment is made from funds withheld from the salaries, the deducted portion amounted merely to a reduction in salary and that such funds withheld for pension purposes constituted public funds.

In 1949, the court, in the case of *Board of Trustees of the Firemen's Pension Fund of and for the City and County of Denver, et al. v. The People ex rel. Behrman,* 119 Colo. 301, 203 P.2d 490, held that a pension is not a matter of contract and is not founded on any legal liability. In the same year, in the case of *McNichols, Auditor, et al. v. Police Protective Association of Denver, et al.,* 121 Colo. 45, 215 P.2d 303, this court held the police fund to be a public fund impressed with a trust for public servants, and that it could not be disbursed without clear authority of the law.

In 1959 this court, in the case of *Police Pension and Relief Board of the City and County of Denver, et al. v. McPhail, et al.,* 139 Colo. 330, 338 P.2d 694, overruled the holding in the *Behrman* case, *supra,* to the effect that a contributory pension is a gift or gratuity even after fulfillment of the conditions precedent. The court went on to hold that where it is shown that the pension system is a contributory one to which the plaintiffs had contributed a percentage of their salaries each month, and acquired their pension status prior to the adoption of an amendment to the city charter, which repealed an escalation provision, such amendment could not have the effect of impairing the vested contractual rights of

plaintiff. The court further held that where a percentage of an employee's salary is withheld each month and paid into a pension fund, the fact that the employee is denied actual physical possession of such money does not mean that when deducted from his salary it was not his property; it does constitute a consideration paid into the pension fund, the benefits provided thereby being an important part of his compensation.

In the case of *Police Pension and Relief Board of the City and County of Denver, et al. v. Lawrence Bills, et al.*, 148 Colo. 383, 366 P.2d 581, an action was brought by police officers to determine their rights under a charter amendment. The plaintiffs claimed that prior to the amendment their pension rights had ripened into a vested contractual obligation or, if not a complete vesting, at least a limited vesting to the end that there could not thereafter be a unilateral adverse change in their pension plan. The court supported the rationale of the *McPhail* case, *supra*, in support of the plaintiffs' contention holding that a person who enters into governmental service, where a retirement plan is in effect, acquires a limited vesting of his pension rights while still in active service and a vested pension right upon retirement. The court also held that when a member of the police department retires from active service, his retirement rights thereupon become a vested contractual obligation not subject to unilateral alteration. For purposes of clarification, the following quotation from the *Bills* case is set forth:

"Historically, pensions to retired government employees have long been viewed as a mere gratuity from a benevolent sovereign, and this has been true even though the employee had himself contributed to the particular pension fund. Being a gift only, the pensioner acquired no right to a continuance thereof, and the pension plan and the payments made thereunder were always subject to unilateral change of an adverse nature or could even be abolished in toto by those who as of

a particular moment were in authority. For many years the foregoing represented the thinking and philosophy of this Court. [Citing cases.]

"However, for the past twenty-five years there has been an ever growing school of judicial thought which holds that a person who enters into governmental employment where a retirement plan is in effect, thereby acquires a *limited* vesting of his pension rights while still in active employment and a *vested* pension right upon retirement. The same result obtains where during his active governmental employment a particular pension plan is placed in effect, the theory being that such is a material inducement to the employees to remain in the employment of the government. * * *."

The defendants contend that deductions from an officer's salary for the pension fund grant no vested right in his contributions to the fund. The contribution only establishes a right to receive a pension or benefits pursuant to the terms and contingencies of the pension system. The cases cited by the defendants are from jurisdictions in which the applicable statute contains no provision for a refund, which is the situation in the case at bar.

In the case of *Graven v. Scott, et al.,* 249 App. Div. 514, 292 N.Y.S. 771, the court held that it was without power to read such a provision into the statute (citing cases). In another New York case, *Donovan v. City of Rye, et al.,* 271 App. Div. 836, 65 N.Y.S.2d 737, the facts were very similar to the facts in this case, and the court said:

"* * * Plaintiff did not discontinue service. His service was terminated, not by his voluntary act, but by dismissal. Since the local law makes no provision for repayment of pension deductions under such circumstances, plaintiff has no cause of action for the recovery thereof. * * *."

Additional cases of the same tenor, from other jurisdictions, are cited by the defendants. The cases cited

hold that an officer contributing to the fund has no vested right to his contributions.

It has been suggested that if these contributions are not refunded, the Fund will be unduly enriched. In the case of *McFeely v. Pension Commission of City of Hoboken,* 8 N. J. Super. 575, 73 A.2d 757, the court disposed of this contention in the following words:

"Plaintiff contends that if the amount he paid into the fund is not refunded, the pension commission will be unjustly enriched. However, plaintiff overlooks the fact that the moneys paid out of the fund upon retirement, death or disability are not derived solely from salary deductions from employees but also come from other sources. * * *. Plaintiff, as a member of the retirement system, contributed only a fraction of the amount he would have received had he become disabled or eligible for retirement. In return for his contributions he has had the benefit and protection of the pension system. * * *."

■ Up to the time the plaintiffs severed their connection with the Police Department, either voluntarily or involuntarily, they were accorded the benefits and full protection under the plan. An officer who voluntarily severed such connection surrendered those rights and quit contributing to the fund and, having had the protection of the plan up to that time, he is not legally, equitably or morally entitled to a return of his contributions.

■ The claim of plaintiffs in the case at bar is based upon the allegation that their contributions were the consideration for a contractual arrangement under which they were to receive a pension after twenty-five years of active service as police officers. Assuming this to be true, we cannot see the materiality of the testimony and argument relative to limited or vested rights to a pension. Plaintiffs are not interested in a pension in this case, but only in the return of their contributions. To prevail in this case, on the basis of contract, where the

charter is silent on the issue presented, it was incumbent upon the plaintiffs to prove that there was a contract between the city and themselves, as retired police officers, by the terms of which, in return for their contributions, they would be repaid these contributions upon their severance from active service. They can find no comfort in the argument that they may have a limited or a vested right to a pension, when a pension is not what they are seeking. The evidence is insufficient, or rather is totally lacking, that there was ever any "contractual arrangement" between the parties relating in any way to the return of the officers' contributions. Without such evidence, plaintiffs cannot prevail under the theory upon which their complaint is based.

The judgment is affirmed.

MR. JUSTICE PRINGLE concurs in part and dissents in part.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE FRANTZ dissent.

MR. JUSTICE PRINGLE concurring in part and dissenting in part:

With respect to contributions made to the Police Pension and Relief Fund by the named plaintiffs after June 1, 1947, I am in complete accord with the philosophy and result of the majority opinion. However, I do not agree that the same principles can be applied to payments made to the Pension Fund by the named plaintiffs by way of deductions from salary before June 1, 1947.

Article XX of the Colorado Constitution provides that officers in the Classified Civil Service should receive a stated salary, the amount of which shall be fixed by the charter. As a condition of their employment, the named plaintiffs were required to suffer a deduction from their salary for payment into the pension fund.

It matters not, as I see it, that they may have received some benefit from this deduction. The organic law under which the City and County of Denver operates prohibits the City from, under any guise, reducing the salary of a Police Officer below the amount set by charter provision. The charter amendment of June 1, 1947 provided for a contribution to the pension fund to be deducted from salary. Before that date, in my view, the charter did not permit the City to require such a deduction.

MR. JUSTICE FRANTZ dissenting:

I am unable to concur in the rationale or result of the majority opinion.

In effect, the majority holds that, absent an express charter provision, persons situated as are the plaintiffs have no claim to any part of the moneys they have paid as consideration for contract value never to be received. And the majority further holds that, while plaintiffs have sufficient contractual rights to prevent their pension terms from being adversely altered, their rights are not sufficient to require a refund, *if determinable,* where they have made payments toward pensions which they will never get.

Completely ignored are three vital questions upon which, in my view, the determination alluded to depends. The first is the extent to which payments made by the plaintiffs were for protection currently received while serving on the police force. This protection can be actuarily valued and is a question of fact. *Retirement Board v. McGovern,* 316 Pa. 161, 174 Atl. 400. If exacted contributions exceeded the value of such protection, the second question concerns that portion of total exactions allocatable to securing a pension. As to these moneys, paid solely for future pensions, the third question left unexamined is whether, as an actuarial necessity, the pension fund's existence would be endangered or im-

paired by return of plaintiffs' contributions. If not, they should be returned.

The problems above posed are extremely difficult questions of fact that must be confronted and resolved before this court can make any sort of meaningful pronouncement governing the rights of the respective parties. Until such findings are before us, we cannot and should not act. Consequently, I would remand the case.

The record reveals reversible error on the part of the trial court in refusing to admit as evidence plaintiffs' Exhibit "A" and other evidence going to the actuarial basis of the Pension and Relief Fund. As said above, not only was this material and relevant but it possibly could be determinative and should have been admitted.

MR. CHIEF JUSTICE SUTTON authorizes me to say that he joins in this dissent.