DANIEL R. SANDELL AND ANOTHER v.
ST. PAUL POLICE RELIEF ASSOCIATION.

236 N. W. 2d 170.

November 28, 1975—No. 45437.

*Rosen, Kaplan & Ballenthin, Howard L. Kaplan,* and *Marvin A. Liszt,* for appellant.

*Daniel R. Sandell* and *John C. Vigoren,* pro se, for respondents.

Heard before Sheran, C. J., and Rogosheske and Knutson, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Action in Ramsey County Municipal Court by two former St. Paul police officers to recover their contributions to defendant, St. Paul Police Relief Association. Both parties moved for summary judgment and, following a hearing July 23, 1974, plaintiffs' motion was granted. Judgment was entered September 23, 1974, for plaintiffs in the amount of their respective contributions, and it is from that judgment that defendant appeals. We reverse.

The St. Paul Police Relief Association is a Minnesota corporation organized pursuant to L. 1955, c. 151, as amended,[1] for the general purpose of maintaining and administering a policemen's pension fund for the benefit of members of the St. Paul Police Department and their widows and dependent children. The system provides for retirement pensions after 20 years minimum service, L. 1955, c. 151, § 9, as amended by L. 1963, c. 271, § 5, and L. 1971, c. 549, § 3; disability pensions for both on-duty and off-duty injury or illness, L. 1955, c. 151, § 9, as amended by L. 1963, c. 271, § 6, and L. 1973, c. 286, § 1; and death benefits to widows and dependent children, L. 1955, c. 151, § 13, as amended by L. 1963, c. 271, § 7, and L. 1971, c. 549, § 2.

It is funded from a number of sources, L. 1955, c. 151, § 6, as amended by L. 1961, c. 434, § 1, and L. 1969, c. 442, § 1, and L. 1955, c. 151, § 7, as amended by L. 1963, c. 271, § 4, L. 1965, c. 465, § 1, and L. 1969, c. 442, § 2, the two principal sources being

---

[1] L. 1955, c. 151, was coded as Minn. St. 1957, §§ 423.82 to 423.836. Since then, the act and amendments to the act have not been coded or included in Minnesota Statutes.

264

St. Paul property taxes and contributions from police officers. Plaintiffs, Daniel R. Sandell and John C. Vigoren, contributed $2,635.72 and $2,262.97 respectively during their employment with the St. Paul Police Department. Both plaintiffs voluntarily terminated their employment, Sandell on July 18, 1973, after approximately 5 years with the department, and Vigoren May 17, 1973, after 3 years.

The issue raised on this appeal is: Are members of the St. Paul Police Relief Association who voluntarily terminate their employment with the police department prior to becoming eligible for retirement pension benefits entitled to a refund of their compulsory contributions to the pension fund in the absence of express statutory authority to either refund or retain those contributions?

The statutory provisions regulating the St. Paul Police Relief Association are not currently part of Minn. St. c. 423, which provides for police pensions in cities of the second, third, and fourth classes. Authorization of police pensions for cities within these classes, as well as the St. Paul police pension, have their origin in separate enactments of the legislature enacted at different times.

The statute authorizing the St. Paul pension system was the first to be enacted, L. 1915, c. 68. Since its enactment it has been amended on numerous occasions and substantially revised twice, L. 1945, c. 47, and L. 1955, c. 151, but throughout its history, it, unlike the other pension systems,[2] has never contained a provision for the refund of a police officer's contributions.

Both parties claim this legislative silence works in their favor. Defendant argues that the purposes for which the pension fund can be used are clearly defined—

"[t]he policemen's pension fund shall be used only for the pay-

---

[2] Minn. St. 423.33 and 423.48 (full refund, cities of the fourth class); Minn. St. 423.377 (full refund, cities of the third class); Minn. St. 423.809, subd. 2 (75 percent refund, cities of the second class).

ment of service, disability, or dependency pensions and the expenses of administering the fund," (L. 1955, c. 151, § 8)

and that absent legislative authorization, a refund of an officer's contribution would be in violation of that section. Plaintiffs, on the other hand, insist that the association must be expressly authorized to *retain* an officer's contribution where he terminates his employment prior to becoming eligible for pension benefits.

The trial court, in granting plaintiffs' motion for summary judgment, relied on the refund provisions in Minn. St. c. 423 as evincing a legislative intention that refunds were to be accorded members of all police pension systems, including St. Paul.

The legislative history does not seem to support that conclusion. The refund provisions are not new to c. 423. Pension systems in cities of the fourth class have provided for refunds since 1935, L. 1935, c. 170; cities of the third class since 1943, L. 1943, c. 521; and cities of the second class since 1945, L. 1945, c. 199. In light of the existence of these refund provisions for some 30 to 40 years, during which the St. Paul pension system underwent major revision and frequent amendment without inclusion of a refund provision, the implication seems more logically to be that rather than a mere oversight of the legislature a refund provision was not intended.

It seems clear that all of this legislation in Minnesota was special legislation to create pension systems for different classes of cities, each presumably having a different pension philosophy. That one system differs from another under these circumstances should be expected. The conclusion seems inescapable that the legislature did not intend the St. Paul system to provide for a refund of member contributions.

The analysis used by the trial court was applied in Louisiana to find legislative intent to allow a refund of an officer's contributions. Hoffpauir v. City of Crowley, 284 So. 2d 114 (La. App. 1973). Two police pension systems for different cities, similar in nature and part of the same chapter of the Louisiana Civil Code, differed in that one plan provided that no refunds were

allowed while the other had no such provision. A third plan, similar to these two and enacted subsequently, did not expressly prohibit refunds. The court concluded that the omission of the prohibition in the two systems and inclusion in the other indicated that the legislature intended that refunds should be allowed in the two which were silent on the subject.

Jurisdictions other than Louisiana which have had occasion to consider the refund of an employee-member's compulsory contribution to a public pension system absent legislative authorization have uniformly denied the refund,[3] a fact apparently conceded by plaintiffs. These decisions proceed on one of two theories.

The first theory regards the compulsory contribution as the transfer of public money from one fund (salaries) to another fund (pensions) in which the employee never acquires any right and not as a private payment by the employee-member.

"The statutory police pension fund provided for by this statute requiring *compulsory* participation and *compulsory* contributions by the police officers confers no vested rights upon the police officers or other participants; the act is based on the sovereign power of the state to provide for the general welfare of the employees and society generally and it is not in the nature of a contract between the police officers or other participants and the state or municipality * * *. Such a pension under such a statute is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure; the compulsory contributions into the fund by way of exactions from the salaries of the police officers are not in fact payments by the officers; their employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension

---

[3] See, generally, 3 McQuillan, Municipal Corporations (3 ed.) § 12.146; 2A Antieau, Municipal Corporation Law, § 22.15; 62 C. J. S., Municipal Corporations, § 588; 60 Am. Jur. 2d, Pensions and Retirement Funds, § 49.

fund; such are not first segregated from the public funds so as to become the private property of the officers and then turned over to the pension fund, but are set aside or transferred from one public fund to another, and remain public money to be dispensed or withdrawn at will and over which the officer from whose salary they are deducted has no control and in which he has no right * * *." Blough v. Ekstrom, 14 Ill. App. 2d 153, 159, 144 N. E. 2d 436, 439 (1957). (Italics supplied.)

For other examples of decisions applying the "gratuity" theory, see, Richards v. City of Geneva, 161 Misc. 572, 292 N. Y. S. 397 (1936) ; Reagan v. Board of Firemen, Policemen and Fire Alarm Operators' Pension Fund Trustees of San Antonio, 307 S. W. 2d 958 (Tex. Civ. App. 1957) ; McFeely v. Pension Commission of City of Hoboken, 8 N. J. Super. 575, 73 A. 2d 757 (1950).

The second theory relies on principles of contract. It treats the compulsory contribution as a payment by the employee-member, but, in reaching the same result as reached under the other theory, concludes that he has received a sufficient consideration for his contribution. The consideration consists of (1) the *present* protection provided the employee and his dependents in the event of his disability or death, and (2) the *present* right to a pension on retirement conditioned on a minimum period of employment.

"Up to the time the plaintiffs severed their connection with the Police Department, either voluntarily or involuntarily, they were accorded the benefits and full protection under the plan. An officer who voluntarily severed such connection surrendered those rights and quit contributing to the fund and, having had the protection of the plan up to that time, he is not legally, equitably or morally entitled to a return of his contributions.

"* * * To prevail in this case, on the basis of contract, where the charter is silent on the issue presented, it was incumbent upon the plaintiffs to prove that there was a contract between the city and themselves, as retired police officers, by the terms

of which, in return for their contributions, they would be repaid these contributions upon their severance from active service. They can find no comfort in the argument that they may have a limited or a vested right to a pension, when a pension is not what they are seeking." Derby v. Police Pension and Relief Board, 159 Colo. 468, 476, 412 P. 2d 897, 901 (1966), followed in Benson v. City of Sheridan, 31 Colo. App. 540, 506 P. 2d 401 (1972).[4]

See, also, Williams v. Schrunk, 527 P. 2d 1 (Ore. App. 1974); Grace v. City of Los Angeles, 249 Cal. App. 2d 577, 58 Cal. Rptr. 388 (1967); Goodwin v. Board of Trustees, 72 Cal. App. 2d 445, 164 P. 2d 512 (1946).

Adoption of either rationale yields the same result, the denial of claims for refund. We reject, however, the gratuity theory.

---

[4] Some support for granting a refund of an employee's contribution to a pension fund appears in the dissent to Derby v. Police Pension and Relief Board, 159 Colo. 468, 478, 412 P. 2d 897, 902 (1966):

"Completely ignored are three vital questions upon which, in my view, the determination alluded to depends. The first is the extent to which payments made by the plaintiffs were for protection currently received while serving on the police force. This protection can be actuarily valued and is a question of fact. (Citation omitted.) If exacted contributions exceed the value of such protection, the second question concerns that portion of total exactions allocatable to securing a pension. As to these moneys, paid solely for future pensions, the third question left unexamined is whether, as an actuarial necessity, the pension fund's existence would be endangered or impaired by return of plaintiffs' contributions. If not, they should be returned."

Plaintiffs cannot take much comfort in that position, however. The financial plight of police pension systems in Minnesota, including St. Paul, is a well-documented fact. See, 56 Minnesota Municipalities 278, and the reports of the Legislative Retirement Study Commission for 1971 and 1973. Presumably the St. Paul system relies on retaining the contributions of its members who depart prior to becoming eligible for pensions, and a refund of those contributions would undoubtedly impair the system. Of course, as in Derby, the record here is incomplete for a determination as suggested in the above dissent.

The contract approach finds support in the prior decisions of this court and we hold it is applicable here.

In Stevens v. Minneapolis Fire Dept. Relief Assn. 124 Minn. 381, 145 N. W. 35 (1914), a member of that relief association brought an action to recover a disability pension which he had been denied by the association. In ruling in favor of the member, this court analogized the rights acquired by members of relief associations to those acquired by members of mutual benefit societies, which of course are contractual. It rejected the notion that as between the association and its members pension benefits were a mere gratuity. See, also, Gibbs v. Minneapolis Fire Dept. Relief Assn. 125 Minn. 174, 145 N. W. 1075 (1914).

This approach is also consistent with the statement in 3 McQuillan, Municipal Corporations (3 ed.) § 12.172:

"The relation between a fireman's or policeman's benefit association and its member is a matter of contract, the terms of the agreement being found in the constitution and by-laws of the association and the statute pursuant to which it is organized. * * * The provisions thereof * * * generally are determinative of such questions as * * * the right on resignation or dismissal to a refund of moneys paid into the association * * *."

Neither the articles of incorporation nor the by-laws of the St. Paul Police Relief Association contains a provision for the return of a member's contributions upon resignation. Absent such a provision, plaintiffs are not contractually entitled to a refund.

The substance of plaintiffs' argument is not readily apparent. In their brief they allege that they were without knowledge of the no-refund feature of the pension system when they began their employment with the St. Paul Police Department, and that defendant acted in an arbitrary fashion with regard to their efforts to change this feature or have their contributions transferred to alternative pension systems. None of these claims appears in the record. Plaintiffs' final appeal is to the "interest

of justice and equity." Although principles of contract law and equity furnish theories of recovery such as unconscionability, unjust enrichment, reliance, mistake, contracts of adhesion, forfeiture or penalty, none of these principles are articulated by plaintiffs or supported by the record. Moreover, any argument that could be made is weakened by the fact that plaintiffs were receiving a present benefit during the period they made their contributions.[5]

In light of the legislative intention not to allow refunds, the lack of any contractual provision for refunds, the decisions of other jurisdictions uniformly denying refunds under similar circumstances, and the absence of any articulated theory of recovery on behalf of plaintiffs, the trial court is reversed and judgment is hereby ordered entered for defendant.

Reversed.

---

[5] A claim of unjust enrichment was denied on this basis in the Derby case:

"It has been suggested that if these contributions are not refunded, the Fund will be unduly enriched. In the case of McFeely v. Pension Commission of City of Hoboken, 8 N. J. Super. 575, 73 A. 2d 757, the court disposed of this contention in the following words:

'Plaintiff contends that if the amount he paid into the fund is not refunded, the pension commission will be unjustly enriched. However, plaintiff overlooks the fact that the moneys paid out of the fund upon retirement, death or disability are not derived solely from salary deductions from employees but also come from other sources * * *. Plaintiff, as a member of the retirement system, contributed only a fraction of the amount he would have received had he become disabled or eligible for retirement. In return for his contributions he has had the benefit and protection of the pension system. * * *' " 159 Colo. 476, 412 P. 2d 901.