**Muriel DONALDSON, Respondent,**

v.

**MANKATO POLICEMEN'S BENEFIT ASSOCIATION, Appellant.**

Nos. 48775, 48927 and 48928.

Supreme Court of Minnesota.

March 23, 1979.

534

McLean, Peterson, Sullivan & Haugh and Thomas R. Sullivan, Mankato, for appellant.

Morley Friedman, St. Paul, for respondent.

Heard before TODD, WAHL, and KENNEDY, JJ., and considered and decided by the court en banc.

CHARLES W. KENNEDY, Justice.[1]

Appeal from a judgment determining that Muriel Donaldson, the widow of a Mankato policeman, is entitled to a pension. The Mankato Policemen's Benefit Association had denied the pension, alleging that

---

1. Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

Mrs. Donaldson was ineligible because she had "commenced * * * an action for divorce" and "had been residing apart from" her husband at the time of his death. The trial court found that Mrs. Donaldson had abandoned any intent to obtain a divorce, and that her husband's absence from the home was temporary, for reasons of health, and that she was eligible for the pension. Except for its disallowance of prejudgment interest, the decision of the trial court is affirmed.

At the time of his death on January 13, 1967, Mr. Donaldson was 61 years of age and his wife, Muriel Donaldson, was 63. The applicable police pension law, Minn.St. 1967, Sec. 423.37 et seq., (L.1943, c. 521), authorized, in cities of the third class, a "policemen's pension fund for the benefit of its members" and "the widows and children of its members * * *." Funds were to come from tax levies, deductions from the basic pay of members, and private sources. §§ 423.376–423.378. Appellant association was formed in 1947 pursuant to L.1943, c. 521, as amended.

Minn.St.1967, § 423.387, provided in part:

"When a service pensioner * * * dies, leaving:

"(a) a widow who became his legally married wife while or prior to the time he was on the payroll of any such police department as a policeman, and remained such continually after their marriage until his death, without having applied for any divorce or legal separation,[2] and who, in case the deceased member was a service or deferred pensioner, was legally married to such member before his retirement from said police department; and who, in any case, was residing with him at the time of his death. No temporary absence for purposes of business, health, or pleasure shall constitute a change of residence for the purposes of this section.

*    *    *    *    *    *

"Such widow * * * shall be entitled to a pension * * *."

2. Section 423.387 was amended by L.1978, c. 562, § 19. The phrase "without having been granted a marriage dissolution or legal separa-

Muriel and Gordon O. Donaldson were married continuously from 1932 until his death. They had three children. Mr. Donaldson was a Mankato policeman from April 1, 1937, to April 1, 1946, and from October 1, 1947, until he retired on December 5, 1964. Deductions from his pay went into the association's pension fund. On retirement, he received a pension.

In October 1964, for reasons attributable to illness of both parties, Mrs. Donaldson started an action for divorce. Mr. Donaldson moved to a separate Mankato residence and the parties never lived together again. Mr. Donaldson contested the divorce action. On January 5, 1965, the court issued a temporary order that Mr. Donaldson live away from the home and pay temporary alimony of $125 per month, reduced by court order of June 25, 1965, to $50 per month, which order was in effect at Mr. Donaldson's death. After the June 25 order, there were no further proceedings in the divorce action. No judgment of divorce or legal separation was entered.

■ 1. The trial court found that Mrs. Donaldson had abandoned the divorce action, saying:

"The inference the court drew from the facts surrounding the divorce action is that it had been virtually abandoned. This was obviously her intention and, facts seem to indicate, his also. The court does not use the term 'abandonment' in its full legal sense, as it relates to pendency of actions. * * *."

We understand the finding to mean that once the divorce proceeding brought about a separation, Mrs. Donaldson abandoned any intent to proceed with the action and obtain a divorce, if she had such an intent when the action was commenced. The finding is not clearly erroneous and may not be set aside. Rule 52.01, Rules of Civil Procedure. Both Mr. and Mrs. Donaldson were seriously ill before and after the divorce action was started. Mr. Donaldson's condi-

tion" was substituted for "without having applied for any divorce or legal separation."

tion resulted in his abusive treatment of his wife. That treatment aggravated her ailments and required that she live separately while those circumstances existed. The action was started, as the trial court put it, "to accomplish a physical separation to protect" the health of Mrs. Donaldson and a daughter. She did not intend to dissolve the marriage. After separation, no further effort was made by either party to bring about a divorce. There is no evidence that Mrs. Donaldson intended to take the proceeding before a court and apply for a judgment.

We are of the view that in the circumstances, Mrs. Donaldson had not "applied for * * * a divorce" so as to be disqualified from the pension, within the meaning of the statute.

Part of the legislation was intended to provide a pension to the widow of a policeman if a marriage took place while or before the husband was a policeman, and continued during his life. Continuity of the marriage was a substantive factor and there was consideration of divorce. The language used, "without having applied for any divorce or legal separation" is ambiguous. One who obtained a divorce would have applied for a divorce. What conduct, short of obtaining a divorce, the legislature intended would amount to applying for a divorce, is uncertain. An action for divorce, when any intent to complete it had been abandoned, would not actually threaten the continuity of the marriage and would furnish no reason for depriving the widow of a pension at death of the husband. We do not believe the phrase "applied for any di-

vorce" was intended to extend to a mere suit for divorce, without consideration of attendant intent, and circumstances, and results. Thus the applicable statute did not disqualify Mrs. Donaldson.

■ That view is confirmed by legislative treatment of the statute since its enactment. In 1978, to clarify the meaning of the provision, the legislature changed the phrase "without having applied for any divorce or legal separation" to "without having been granted a divorce or legal separation."[3] The purpose of the statute and the clarification of the meaning of the provision in question are persuasive that it was not the intent of the legislature to disqualify a widow from the pension because of a dormant divorce proceeding, unaccompanied by any intent to end the marriage, which did not break the continuity of the marriage. The marriage here involved took place before Mr. Donaldson was a policeman, and continued more than 34 years, and until his death. The parties lived together from 1932 until 1964, as long, in fact, as health permitted. Mrs. Donaldson was in all respects the legal widow of Mr. Donaldson and a reasonable interpretation of the statute requires payment of the pension.

Since Mrs. Donaldson met the condition relating to divorce, it is not necessary to rule on the constitutional objections that have been urged.

■ 2. Under the statute, the widow had to have been a legally married wife who, "in any case, was residing with" the pensioner at the time of his death, with the qualification:

**3.** L.1978, c. 562, which amended the subject provision of § 423.387 and a number of other pension statutes, was entitled "An act relating to retirement; clarifying various ambiguous retirement provisions; removing various obsolete gender references; * * *." Tapes of the legislative proceedings disclose that one of the provisions considered ambiguous was the phrase "without having applied for any divorce or legal separation", and the amendment, to change the language to "without having been granted a marriage dissolution or legal separation" was offered as a technical amendment, not a substantive change. The bill as amended passed without opposition and without sub-

stantial discussion in both houses of the legislature. Language was similarly changed as to policemen's pension in cities of the fourth class, § 24 of c. 562, and as to firefighter's pension in cities of the second class, § 29, so that now the phrase, "without having applied for any divorce or legal separation" does not appear in the general pension laws of the state.

"An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended, as where the act amended is ambiguous." 82 C.J.S. Statutes § 483; *United States v. Stewart,* 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940).

" * * * No temporary absence for purposes of business, health or pleasure shall constitute a change of residence for purposes of this clause." Minn.St. 423.-387, subd. 2(a).

The trial court found that there was no change of residence within the statute because ᴠ

" * * * (t)here was * * * a temporary absence of her husband from the residence which absence was precipitated by reasons of the respective health conditions of the parties and by circumstances neither had the ability to cope with or control."

The finding that the qualification applied is not clearly erroneous. Continuously from October, 1966 until his death on January 13, 1967, Mr. Donaldson was hospitalized. Health reasons had caused the initial separation, and for much of the time thereafter, living together was impossible because of required hospitalization of both parties, and protection of Mrs. Donaldson from aggravation of her illness by conduct of Mr. Donaldson. But the evidence does not require a finding that the separation was permanent. Mrs. Donaldson had abandoned any intent of ending the marriage by divorce, and was willing to resume cohabitation if Mr. Donaldson sought psychiatric care. It is not shown that the parties had settled definitely on any course for the future, and considering their ages, and the years they had been together, it is likely that, had health permitted, they would have resumed living together. Whether the absence was temporary within the meaning of the statute was a question the trial court had to determine from consideration of all of the evidence, and an interpretation of the statute in light of the facts found and the purpose of the legislation. A pension statute is to be liberally construed and applied to carry out its purpose. *Mattson v. Flynn,* 216 Minn. 354, 13 N.W.2d 11 (1944). The trial court's view is justified.

■ 3. The trial court did not allow prejudgment interest because of the delay between commencement of the action, November 23, 1970, and trial, November 21, 1977, and because the association could rely on the statute as a defense.

It was stipulated that Mrs. Donaldson "made a timely demand for payment to her of widow's benefits * * *." It is not shown that the delay in bringing the case to trial was attributable to her. Nor is it shown how payment of interest would be unjust to the association, which was required by Sec. 423.389 to keep money in the pension fund invested in government and municipal bonds. Thus, while the action has been pending, the fund out of which Mrs. Donaldson would have been paid has presumably been earning interest.

The amount was certain, and the time of payment was certain. It was stipulated that if eligible, Mrs. Donaldson is entitled to $175 per month commencing January 1967. Payment did not depend upon any contingency. Facts which could be ascertained as of the time of death determined the right to the pension. The liability was contractual. *Sandell v. St. Paul Police Relief Assn.,* 306 Minn. 262, 236 N.W.2d 710 (1975)—the rights of employee-members of a police relief association are contractual as between the member and the association. Under the statute, Mrs. Donaldson is a beneficiary of the contractual rights between Mr. Donaldson and the association.

On those facts, the unpaid payments draw interest, and the right to interest is not affected by a dispute over the association's liability. Restatement, Contracts, § 337. The Minnesota Annotations to Restatement, Contracts, § 337, clause (a), declare the Minnesota rule to be:

"For the non-payment of a definite sum of money, interest is always recoverable except when otherwise agreed, provided that payment has become due and there has been a breach. [Citing *Larson v. Anderson,* 122 Minn. 39, 141 N.W. 847 (1913), and other Minnesota decisions] The fact that the defendant denies the existence of the debt or denies that he has committed any breach of the contract does not prevent the allowance of interest as damages for his breach. *Perine v. Grand Lodge A.O.U.W.* (1892) 51 Minn. 224, 53 N.W. 367."

**538**

See, also, *Bourdeaux v. Gilbert Motor Co.,* 220 Minn. 538, 30 N.W.2d 393 (1945).

Mrs. Donaldson is entitled to simple interest at 6 percent per annum, Minn.St. 334.01, on the payments as they became due.

Judgment affirmed except as to disallowance of prejudgment interest; remanded for computation and inclusion of interest.

Affirmed in part; reversed in part; and remanded for computation and inclusion of interest.

SHERAN, C. J., and OTIS, J., took no part in the consideration or decision of this case.