Richard NORDBY, Appellant,

v.

The AUSTIN POLICEMEN'S BENEFIT ASSOCIATION, Respondent,

No. CX–83–1333.

Court of Appeals of Minnesota.

May 1, 1984.

Robert M. Maus, Baudler, Baudler & Maus, Austin, for appellant.

Raymond B. Ondov, Alderson, Ondov, Leonard & Sween, Austin, for respondent.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Richard Nordby sued the Austin Policemen's Benefit Association (Assn.) seeking a declaratory judgment that the Assn. bylaws entitled him to a disability pension as of February 2, 1982, the date he retired due to his permanent disability. The trial court concluded he was entitled to disability benefits on or after April 15, 1982, the date his accumulated sick leave from the city would have been exhausted if it had not been erroneously paid to him in a lump sum on February 10. Nordby appeals. The Assn. cross-appeals. We reverse.

## FACTS

Richard Nordby began work as an Austin City police officer on November 30, 1959. Nordby was first disabled in April 1966, when he injured his back on the job. This disability was temporary and he returned to work in 1968. On July 17, 1981, Nordby re-injured his back on the job and has not worked since as a police officer. He must take pain-killing drugs and cannot move anything over 25 lbs., or sit or stand

for more than one hour at a time. Nordby's doctor determined that Nordby's back is 38% permanently disabled and his whole body is 25% permanently disabled. Since Nordby's condition is degenerative; he will never work full time again.

On February 2, 1982, Chief Nelson asked Nordby to come to the station to discuss the doctor's reports he had just received. Chief Nelson told Nordby he saw no way for him to return to work. Nordby agreed. As a disabled officer, Nordby realized he could continue receiving hospitalization, sick leave and vacation time. However, since Nordby knew he would never return to work he decided to retire at this time and apply for a disability pension. The office secretary drew a resignation letter and was asked to prepare a disability pension application. Since there were no more disability pension applications on hand, Nordby suggested a service pension application be modified by crossing out the word service and typing in the word disability. This modified application was submitted to the Assn. Nordby was not eligible for a service pension because he was not 50 years of age.

Because he retired with 20 years service, he was entitled to a lump sum payment from the City of Austin of his accumulated sick leave, vacation and overtime pay. Nordby received this payment on February 10, 1982.

On February 27, 1982, the Assn.'s Board president mailed Nordby a letter indicating the Board had approved his application for a disability pension due to his permanent disability and would begin paying him benefits in mid-April when his accumulated sick leave was exhausted.

The Assn. commenced Nordby's disability payments on April 16, 1982. Pursuant to newly enacted Minn.Stat. § 423A.14 (1982, eff. Mar. 24, 1982), the Assn. offset Nordby's pension by the amount of his workers' compensation benefits. Nordby collected workers' compensation benefits for his injuries through June 2, 1982, when he completed a small engine repair course.

Nordby sued the Assn. seeking a declaratory judgment that he was entitled to receive disability pension benefits as of February 2, 1982, the date of his retirement, and therefore the Assn. was not entitled to deduct workers' compensation benefits from his disability benefits.

Following trial, the court ruled that Nordby was entitled to disability benefits as of April 15, 1982, the date his sick leave would have been exhausted if it had not been paid in a lump sum.

Nordby argues that he was "separated from the payroll of the police department" and eligible for a disability pension on the date he retired. The Assn. filed a notice of review asserting that Nordby retired and applied for a *service* pension and is therefore ineligible for and has been wrongfully receiving a disability pension.

## ISSUES

1. Is a police officer who retires because of a permanent disability, entitled to a disability pension?

2. Was Nordby's application for a disability pension or for a service pension, for which he was not eligible?

3. Is the Assn. entitled to offset disability pension benefits with workers' compensation benefits?

## ANALYSIS

■ 1. A finding of the trial court is not to be disturbed unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law. *Ortendahl v. Bergmann,* 343 N.W.2d 309, 311 (Minn.App.1984).

The trial court decided that 1) Nordby did not retire, 2) the sick leave was improperly paid in a lump sum and should have been exhausted over a period of time, extending to April 15, 1982, and 3) Nordby was entitled to disability benefits on or after April 15, 1982. Based on these findings, the trial court concluded:

A. That "separated from the payroll of the police department" as used in Article

XVII, Section 1 of the By-Laws of Defendants means that situation in which a disabled police officer is not entitled to draw wages, salary or accrued sick leave pay from the Austin Police Department. B. That Plaintiff was not "separated from the payroll of the police department" within the meaning of Article XVII, Section 1 of the By-Laws of the Defendant until April 15, 1982.

Nordby challenges the above findings and conclusion B.

The evidence shows Nordby did retire and was properly paid his accumulated sick leave in a lump sum. The trial court apparently concluded that Nordby was not "separated from the payroll" until April 15 because it assumed that a retiree is not eligible for a disability pension. We disagree.

Nordby is the first permanently disabled officer to assert a right to retire *and* collect a disability pension from the Assn. Whether Nordby can retire and collect a disability pension involves the construction of Article XVII of the Assn. by-laws, entitled "Disability Pensions." This Article states:

> *Any member* of this association *who*, by reason of sickness or accident, *becomes disabled* from performing the duties of a policeman in this City of Austin, as defined in the Articles of Incorporation and the By-Laws of this Association, *and who as result thereof has been separated from the payroll of* the police department of *said City* of Austin, whether temporarily or permanently, *shall be entitled to receive* from the association, *during the period of such disability, a disability pension* equal to 50% of the basic pay of an active 1st class patrolman. This pension shall be payable monthly commencing within one month from the date of such disability and resulting separation from the payroll as herein defined occurs.

(Emphasis added.)

■ By-laws of relief associations create a contractual obligation between the association and its members. *Sandell v. Saint Paul Police Relief Ass'n.*, 306 Minn.

262, 236 N.W.2d 170 (1975). When interpreting a contract, a trial court should attribute a plain and ordinary meaning to its words. *See Hayle Floor Covering, Inc. v. First Minn. Construction Co.*, 253 N.W.2d 809 (Minn.1977). In addition, we note that pensions are to be liberally construed to carry out their purposes. *Donaldson v. Mankato Policemen's Benefit Association*, 278 N.W.2d 533, 537 (Minn.1979). Applying these principles of law, we hold that the above by-law entitles a permanently disabled officer, who meets the other by-law requirements, to collect a disability pension following his retirement from the city. Nordby is entitled to the disability pension despite his retirement.

■ Nordby retired on February 2, 1982 and was properly paid his accumulated sick leave in a lump sum shortly thereafter. After February 2, the city no longer had any financial obligation to Nordby. Thus, he was "separated from the payroll of the police department" on that date and became eligible to receive a disability pension from the Assn.

■ 2. The trial court found that Nordby's application of February 2, 1982, was either an application for a continuing disability pension or an application for a service pension as of Nordby's reaching the age of 50, but was not intended as an application solely for a service pension. The Assn. contests this finding.

Although Nordby completed a "service pension" application, he crossed out the word "service" and inserted the word "disability." The Board president subsequently had Nordby sign the appropriate disability pension application. The Assn. Board minutes refer to Nordby's application as one for a disability pension, not a service pension.

The trial court's conclusion that Nordby applied for and is eligible for a disability pension is reasonably supported by the evidence and should not be reversed.

■ 3. The Assn. by-laws provide that a disability pension "shall be payable

monthly commencing within one month from the date of such disability and resulting separation from the payroll." The Assn. must commence Nordby's disability pension benefits at least as of March 2, 1982; therefore it may not offset the pension by the amount of Nordby's workers' compensation benefits under Minn.Stat. §§ 423A.14 and 423A.15 because the offset provision only applies to persons who first begin receiving disability benefits after March 24, 1982. Minn.Stat. § 423A.15.

### DECISION

When Nordby retired from the Austin Police Department due to his permanent disability, and filed an application for a disability pension, he became eligible for a disability pension as provided by the by-laws of the Austin Policemen's Benefit Association. Nordby was "separated from the payroll" and became eligible for a disability pension as of February 2, 1982, the date he retired due to his permanent disability. Because the Association must commence disability pension payments by March 2, 1982, it may not offset these payments by workers' compensation payments because the offset provisions of Minn.Stat. § 423.14 only apply where a person begins receiving disability payments after March 24, 1982.

We reverse.