Gary D. FEY, Appellant,

v.

**MINNEAPOLIS POLICE DEPARTMENT, et al., Respondents,**

**Minneapolis Police Relief Association, Inc., Intervenor, Respondent.**

No. C2–84–1742.

Court of Appeals of Minnesota.

April 9, 1985.

Review Denied May 31, 1985.

Cortlen G. Cloutier, Minneapolis, for Gary D. Fey.

Richard S. Reeves, Minneapolis, for Minneapolis Police Department, et al.

Clifford J. Knippel, Jr., Minneapolis, for Minneapolis Police Relief Association, Inc.

Considered and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant Minneapolis Police Officer Gary Fey from order of the court which denied his claim to moneys allegedly found by him in the course of his official duties. The court determined that the challenged statutory provisions and the Minneapolis Police Department regulations were constitutional, that Fey had waived any common law right he may have had to the moneys, and that the Minneapolis Police Relief Association, Inc. was entitled to those moneys. We affirm.

## FACTS

On December 2, 1978, several police officers were called to a burglary in progress at a home owned by Richard Kast. A sum of money, later determined to be $8,527, was observed outside on the snow in Kast's yard. It was initially stipulated to the trial court that Officer Fey found the money.

Neither Kast nor anyone other than Fey came forward prior to initiation of this lawsuit to make a formal claim to the money. Fey made a written claim to the money on June 1, 1979. His claim was denied by the Minneapolis Police Department (MPD). The money remained in the Police Property Room until September 30, 1980. On that date, it was transferred by the MPD to the United States Drug Enforcement Agency (DEA), at the DEA's request, for use as evidence in an ongoing criminal investiga-

tion of Kast. In August 1984, the money was returned and permanently released to the City of Minneapolis (City) by the United States Government.

Fey instituted this action in replevin against the MPD and the City, claiming ownership of the money under the common law as a finder of lost or abandoned property, and for interest thereon dating from December 2, 1978. The Minneapolis Police Relief Association, Inc. (MPRA), an intervenor-respondent herein, is also asserting a claim to the money, arguing Fey contractually relinquished any right to moneys found by him during the course and scope of his employment, pursuant to relevant MPD regulations and Minn.Stat. § 423.-73(c) (1982). Fey also alleges that Minn. Stat. § 423.73(c) is unconstitutional because (1) it violates the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, § 2 of the Minnesota Constitution; (2) it violates the Fifth Amendment of the United States Constitution and Article I, § 13 of the Minnesota Constitution which prohibits the taking of private property for public use without just compensation; and (3) it is unconstitutionally vague.

This matter was submitted to the trial court with the stipulation that Fey found the money. After reading about this case in the newspaper, Minneapolis Police Officer Jensen brought a motion to strike the stipulated facts, asserting that it was he, not Fey, who initially found the money. Jensen's claim was made in support of the MPRA's assertion of title to the money.

On August 15, 1984, the trial court issued an order which found that Fey had contractually waived any right to the contested moneys pursuant to Sections 2–705 and 6–614 of the Minneapolis Police Department Manual and granted title of the moneys to the MPRA pursuant to Minn. Stat. § 423.73(c) (1982). The trial court also found the constitutional issues raised by Fey to be without merit and the factual dispute to be moot.

■ Fey notified the State Attorney General regarding his intention to raise the constitutional issues before the district court. The State Attorney General declined to appear, but reserved his right to be notified if an appeal ensued. Inasmuch as there was no documentation in the record to indicate that the State Attorney General had been notified of the appeal, this court issued an order on February 28, 1985, requiring Fey to provide such documentation by March 11, 1985. No documentation has been received. The constitutional issues regarding Minn.Stat. § 423.-73(c) (1982) will not be addressed by this court.

## ISSUE

Is a Minneapolis police officer contractually barred from asserting a claim of title to unclaimed, lost, or abandoned money found by him in the course and scope of his employment?

## ANALYSIS

Minn.Stat. § 423.715, subd. 1 (1982), requires the establishment of a policemen's relief association by and for the members of a police department of any city having 500,000 or more inhabitants. This association must create, maintain, and administer a policemen's pension fund for the benefit of its members, their widows, children, and beneficiaries. Minn.Stat. § 423.715, subd. 2 (1982). A nonexclusive list of sources of funding for the relief association is statutorily established in Minn.Stat. § 423.73 (1982). At issue in this appeal is subdivision (c) therein which provides that "moneys coming into the hands of members remaining unclaimed for six months" shall be one of the sources of funding for the relief association.

The MPRA is established pursuant to Minn.Stat. § 423.715. They argue that Minn.Stat. § 423.73 preempts the application of common law principles regarding finders of abandoned property as to Fey in this situation. The MPRA also argues that the contractual relationship between the City and Fey as a member of the Minneapolis Police Federation (Federation), and between Fey and the MPRA, prevent Fey from asserting a claim to unclaimed, lost,

or abandoned money found by him in the scope of his employment. We agree.

The Minneapolis Police Department Manual (Manual) dealing with unclaimed nonevidentiary property provides as follows:

* * * when the finder of non-evidence is an officer or other employee of the City of Minneapolis and was acting within the scope of his employment at the time the property was found, the property shall be:

Released to the true owner.

Destroyed.

Placed in a police auction.

Section 6–614, Manual.

This section must be read in conjunction with Section 2–705 of the Manual which provides:

* * * Property which cannot be returned to its owner will be disposed of in accordance with municipal ordinances and state law.

■ Fey argues that the Manual is merely a guideline, and is not part of Fey's employment contract with Minneapolis. General statements of policy by an employer do not meet the contractual requirements of an offer. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983). The Manual, however, constitutes more than mere statements of policy. It sets forth requirements of a Minneapolis police officer's duties. The Manual was drafted to fill the need for a "comprehensive manual of rules and procedures to govern the actions * * * of police officers." (Manual Preface) Compliance with the Manual's provisions is mandatory and a condition of an officer's continuing employment with the City. In accepting and retaining employment as a police officer with the City, Fey became and continued to be contractually obligated to follow current and subsequent modifications of the rules in the Manual. *Pine River*, 333 N.W.2d at 627.

■ Fey argues that since neither Section 2–705 nor 6–614 of the Manual explicitly addresses the finding of money by a police officer or its specific disposition to the MPRA, Fey cannot be held to have contractually waived his right to the mon-

ey. When incompleteness of expression in a contract may be cured by applying the rules of construction, courts are reluctant to declare the contract fails for indefiniteness. *Hartung v. Billmeier*, 243 Minn. 148, 151, 66 N.W.2d 784, 788 (1954).

■ Inasmuch as reasonable construction of the challenged phrases can be achieved with reliance upon statutory law, common law, and common sense, and the intent is clearly ascertainable, the challenged phrases are not impermissibly vague.

Sections 6–614 and 2–705 of the Manual, read in conjunction with Minn.Stat. § 423.-73(c), indicate that Fey, as a Minneapolis police officer, is contractually barred through his employment contract with the City from asserting a claim to money he allegedly found during the course of his official duties.

■ This court also finds the relation between Fey and the MPRA to be contractual. *Sandell v. Saint Paul Police Relief Association*, 306 Minn. 262, 236 N.W.2d 170, 173, 174 (1975). Obligations under this contract are to be found in the constitution and bylaws of the MPRA and the statutes pursuant to which it was organized. *Sandell*, 236 N.W.2d at 174. Thus, pursuant to Minn.Stat. § 423.73(c), this court finds that Fey, through his contractual obligations to the MPRA, waived any common law right he may have to the money in favor of the MPRA. *Id.*

Fey characterizes his "right" to the money herein as a "fundamental constitutional right," and argues that he made no free, voluntary, intelligent, or knowing waiver of such a right. Fey, however, cites no case law to support this characterization, and we find this argument to be without merit.

■ Finally, we note there are strong public policy considerations that support the prohibition against allowing a police officer to assert title to unclaimed money or other property found by him during the course and scope of his employment. *Noble v. City of Palo Alto*, 89 Cal.App. 47, 264 P. 529 (Cal.1928).

## DECISION

Appellant Minneapolis police officer is contractually barred from asserting a claim of title to unclaimed, lost, or abandoned money found by him in the course and scope of his employment.

Affirmed.